**Chester C. SANSON, Plaintiff–Appellant,**

**v.**

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

**No. 91–8528.**

United States Court of Appeals, Eleventh Circuit.

July 15, 1992.

Rehearing and Rehearing En Banc Denied Sept. 16, 1992.

---

Kirwan Goger Chesin & Parks, Allan Leroy Parks, Jr., Larry H. Chesin, Atlanta, Ga., for plaintiff-appellant.

Susan M. Royer, King & Spalding, William A. Clineburg, Jr., Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

This case presents the question whether the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*, preempts a Georgia state law fraudulent misrepresentation claim based on reasonable reliance that causes a person a loss of benefits which would have been received under a special early retirement program. In light of *Ingersoll–Rand Co. v. McClendon,* — U.S. —, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), we hold the plaintiff's state law fraud claims that relate to a qualified employee benefit plan are preempted by ERISA. Since there is no ERISA claim that could be pled, the district court did not abuse its discretion in denying leave to amend the complaint to allege a claim under ERISA. We, therefore, affirm the district court judgment.

■ Chester Sanson alleges that General Motors Corporation (GM) fraudulently represented to him that benefits under a special retirement program would not be offered to Lakewood assembly plant employees. Relying upon that representation, he voluntarily retired under the standard provisions of GM's early retirement program. Sanson claims that but for the representation, he would have continued his employment until it would have been clearer whether the special retirement program would be offered to Lakewood employees.

Shortly after Sanson's retirement, GM offered the special program to certain eligible employees. Sanson immediately contacted GM and demanded that his retirement benefits be increased to the level that the special program provided. GM denied his request, and this action commenced.

Sanson sought to recover the enhanced retirement benefits and compensatory and punitive damages. GM moved for summary judgment, asserting that ERISA preempts Sanson's state law claim. Initially, the district court denied GM's motion, holding the state law claim was not preempted.

> ERISA expressly provides for the preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). State laws, however, that have only a tenuous effect on employee benefit plans are not preempted.... The fact that the misrepresentations concerned the availability of an employee benefit plan is only incidental to plaintiff's claim.... [Therefore] plaintiff's claim for intentional misrepresentation is not preempted by ERISA. (citations omitted).

Dist.Ct.Order, 1:88–cv–827–RCF, (June 28, 1989).

Thereafter, the Supreme Court held in *Ingersoll–Rand Co. v. McClendon, supra,* that ERISA's explicit language and its structure and purpose demonstrate a congressional intent to preempt a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under an ERISA-covered plan. GM then requested the district court to consider the application of *McClendon* to its earlier ruling. After ordering GM to file a subsequent summary judgment motion, the district court reversed its prior ruling based on the belief that "a faithful application of the reasoning of *McClendon* to the facts of this case requires a finding that Plaintiff's cause of action under Georgia law is preempted under ERISA," and denied Sanson's request to amend his complaint as "futile." Dist.Ct.Order, 1:88–cv–827–RCF, (May 24, 1991).

Sanson contends that the district court read too much into the *McClendon* decision. Sanson argues that *McClendon* addresses whether ERISA preempts a claim under a pension-based state law, but that this case involves whether ERISA preempts a general fraud claim under a non-pension-based state law. He claims that the dividing line for purposes of determining ERISA preemption in this context is between claims that "relate to" an employee benefit plan and claims that "affect employee benefit plans too tenuously to be characterized fairly as relating to employee benefit plans." *Howard v. Parisian,* 807 F.2d 1560, 1564 (11th Cir.1987). Contrary to Sanson's argument, the facts of this case demonstrate more than a tenuous relationship to an employee benefit plan.

In *McClendon,* the United States Supreme Court reversed the Texas Supreme Court's holding that an employee could recover in a wrongful discharge action if he established that the "principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." *McClendon,* —— U.S. at ——, 111 S.Ct. at 481, 112 L.Ed.2d at 482. Even though other federal courts had held similar claims preempted by ERISA, the Texas Supreme Court attempted to distinguish McClen-

don's claims because he was "not seeking lost pension benefits but [was] instead seeking future lost wages, mental anguish and punitive damages as a result of the wrongful discharge." *Id.* To prevail, however, McClendon had to plead and the court had to find that an ERISA plan existed and the employer had a pension-defeating motive in terminating the employment. Because the court's inquiry was directed to the plan, the Supreme Court held that the cause of action related to an ERISA plan and was, therefore, preempted.

In this case, Sanson claims that GM's misrepresentations were made in furtherance of an objective of achieving a twenty-five percent reduction in salaried employees without the added expense associated with a financial incentive to the employees targeted for removal (*e.g.,* the special retirement program). The measure of damages sought would be against GM and not against a pension plan. To prevail on his state law claims, Sanson would have to prove the existence of an ERISA plan. He would establish that GM intentionally misrepresented his ineligibility for the special retirement program and knew the plan would be available at the time it told him otherwise. He relied upon the misrepresentation and was damaged by the misrepresentation. *See Allen v. Sanders,* 176 Ga.App. 647, 648, 337 S.E.2d 428, 429 (1985). It can be assumed here that he would prevail on his factual claims to state law.

Whether federal law preempts a state action is a question of congressional intent, and "[t]o discern Congress' intent we must examine the explicit statutory language and the structure and purpose of the statute." *McClendon,* —— U.S. at ——, 111 S.Ct. at 482, 112 L.Ed.2d at 483; *see also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985). ERISA § 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall *supersede any and all State laws* insofar as they may now or hereaf-

ter *relate to any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

ERISA § 514(a), as codified in, 29 U.S.C. § 1144(a) (emphasis added). Under the plain language of § 514(a), only state laws that relate to benefit plans are preempted. *McClendon*, —— U.S. at ——, 111 S.Ct. at 483, 112 L.Ed.2d at 484. A law "relates to" an employee benefit plan when the law "has a connection with or reference to such a plan." *Id.; Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Thus, "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *McClendon*, —— U.S. at ——, 111 S.Ct. at 483, 112 L.Ed.2d at 484.

Based upon the Supreme Court's interpretation and application of ERISA in *McClendon,* the district court properly applied *McClendon* to hold that federal law preempts Sanson's state law claims. The existence of a pension plan subject to ERISA is a critical factor in both cases. It was critical in establishing liability under the state's wrongful discharge law in *McClendon.* In this case, the misrepresentation relates to Sanson's retirement benefits available under GM's special retirement plan. The measure of damages would be the amount of benefits Sanson would have received under the retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan.

■ *McClendon* recognized certain limits to ERISA's preemption clause: that a law normally would not be preempted if the statute did not require the establishment or maintenance of an ongoing plan, or if a statute makes no reference to, or functions irrespective of, a plan. *See e.g., Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 841, 108 S.Ct. 2182, 2192–93, 100 L.Ed.2d 836 (1988); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 2217–18, 96 L.Ed.2d 1 (1987). Although the fraud statute does not involve

the existence of a pension plan, the statute would not apply to this case without the existence of the retirement plan. *See also First Nat'l Life Ins. v. Sunshine–Jr. Food Stores,* 960 F.2d 1546, 1549–50 (11th Cir. 1992).

The district court correctly held that *McClendon* mandates preemption of the plaintiff's state law claim.

■ Sanson alternately contends that if ERISA preempts the state law, the district court abused its discretion in refusing to grant him leave to amend the complaint to state a claim under ERISA. The essential problem Sanson faces is that he does not satisfy the definition of "participant" or "beneficiary" under § 1132 of ERISA. 29 U.S.C. §§ 1002(7)–(8). Only a participant or beneficiary can file a civil action under ERISA. Section 1132(a)(3) provides in pertinent part that

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

. . . .

(e)(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... a participant, beneficiary, or fiduciary.

ERISA § 502, as amended, 29 U.S.C. § 1132.

■ Sanson acknowledges his inability to express a statutory basis for maintaining the present action under ERISA, but contends that there must be some avenue whereby an individual who is defrauded out of pension benefits can obtain a remedy. Sanson argues that the court should create a federal common law fraud claim under ERISA, and suggests Georgia state law as the reasonable source for this federal common law with recovery limited in accordance with policies dictated by ERISA.

The Supreme Court has previously considered and rejected such an extension of the remedies guaranteed under ERISA:

> [T]he detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot [or decided not] to incorporate expressly." (Emphasis in original).

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987) (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985) (cited with approval in *McClendon*, — U.S. at —, 111 S.Ct. at 485, 112 L.Ed.2d at 487) ).

In *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819 (11th Cir.1991), holding that extra-contractual damages under a federal common law claim were not available under ERISA § 502(a)(3), we reaffirmed the interpretation that § 502 defines the specific circumstances upon which one may be granted legal or equitable relief. *Id.* at 822.

Some courts, while recognizing the absence of an express or implied right of action under ERISA, have allowed for the creation of a federal common law in certain instances. A number of the courts, however, follow the restrictive interpretation of § 502(a) as set forth in *Pilot Life, supra. See e.g., First Nat'l Life Ins. v. Sunshine–Jr. Food Stores*, 960 F.2d 1546, 1550 (11th Cir.1992) (argument that ERISA provides inadequate remedy is insufficient reason to overcome language of statute); *Lee v. E.I.*

*DuPont de Nemours & Co.*, 894 F.2d 755, 757 (5th Cir.1990) (ERISA preempts state law claims of fraud and misrepresentation without regard to whether ERISA provided any remedy for claimed wrong); *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 579, 112 L.Ed.2d 584, 112 L.Ed.2d 584 (1990) ("[w]hile our holding will leave [plaintiff] without a remedy, the availability of a federal remedy is not a prerequisite for federal preemption"); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989) (preempting plaintiff's state law claims despite recognition that employer's misrepresentation was a "betrayal without a remedy"). *But see Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990) (court created federal common law rule of unjust enrichment to recover monies advanced to plan participant); *Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 794 F.2d 221 (6th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986) (finding no cause of action under ERISA, court provided federal common law to find cause of action for employer to recover payments mistakenly made to pension plan).

As further support for the creation of a federal common law, Sanson contends that "Congress specifically contemplated that federal courts, in the interests of justice, would engage in interstitial lawmaking in ERISA cases in much the same way as the courts fashioned a federal common law of labor relations under § 301 of the LMRA." *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957, 966 (1st Cir.1989). We have held, however, "[i]n the face of clear precedent to the contrary from the Supreme Court, the Eleventh Circuit, and other Circuits, this Court cannot create a federal common law of remedies for the benefit of the plaintiff on the sole authority of [a congressional report]." *McRae*, 920 F.2d at 823; *see generally Conner v. Aerovox, Inc.*, 730 F.2d 835, 841 (1st Cir.1984), *cert. denied*, 470 U.S. 1050, 105 S.Ct. 1747, 84 L.Ed.2d 812 (1985) ("once Congress has addressed a national concern,

court's fundamental commitment to separation of powers precludes it from scrutinizing the sufficiency of [that] solution").

In view of the foregoing precedent, the district court did not abuse its discretion in denying the motion for leave to amend the complaint.

AFFIRMED.

BIRCH, Circuit Judge, dissenting:

I respectfully dissent. At the outset I must acknowledge that the direction of decision in the courts, particularly in the wake of *Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), favors a finding of preemption. However, given the acknowledged, underlying purpose of ERISA to protect employees and beneficiaries in employee benefit plans,[1] this case represents the point at which the preemption tide should be stayed. A finding of preemption in this case not only fails to further any such protective policy, it conceivably offers an unscrupulous employer a method of avoiding employee benefit "burdens." An employer in this circuit can now hoodwink a long time employee and leave him stranded without any recourse whatsoever. This result stands the entire statutory scheme on its proverbial head.[2]

## I.

The majority holds that the culmination of GM's fraud—the creation of an ERISA plan—is also the very insulation of that fraud. The vehicle the majority uses to reach this surprising result is an overbroad reading of the precedent construing ERISA's preemption language. Under ERISA, state laws are preempted to the extent that the *laws* "relate to" an ERISA plan.[3] 29 U.S.C. § 1144(a) (1988); *McClendon*, —— U.S. at —— – ——, 111 S.Ct. at 482–83. In *McClendon*, the "law" found to be preempted was a judicially created cause of action against *employers who fire employees in order to avoid paying pension benefits.* The Supreme Court found that this very specific cause of action was preempted by ERISA because the *law* creating the cause of action

> makes specific reference to, and indeed is premised on, the existence of a pension plan. In the words of the Texas court, the cause of action "allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund." [*McClendon v. Ingersoll–Rand Co.* ], 779 S.W.2d [69], at 71 [ (Tex.1989) ]. Thus, in order to prevail, *a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment.* Because the court's inquiry must be directed to the plan, this judicially created cause of action "relate[s] to" an ERISA plan.

*McClendon*, —— U.S. at ——, 111 S.Ct. at 483 (emphasis added).

This passage demonstrates that *McClendon* does not govern this case. The *law* creating Sanson's cause of action is not a judicially created specific remedy that explicitly encompasses pension plans. Instead, Sanson relies upon Georgia's basic

---

**1.** *See, e.g., McClendon*, —— U.S. at ——, 111 S.Ct. at 482; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *Nachwalter v. Christie*, 805 F.2d 956, 960–61 (11th Cir.1986).

**2.** I do not subscribe to the view that for every wrong there must necessarily be a remedy. However, where there is a remedy (here a state fraud action), I find it difficult to comprehend, in a common sense way, how a law enacted to protect the very class of individuals into which the appellant squarely fits can be construed to deny him such a preexisting remedy. I am concerned that by adopting such a judicial construction, a court could interpret its way into the province of the legislative branch, and in so doing thwart what Congress set out to accomplish in the first place.

**3.** The majority is apparently confused by this point. In support of its preemption analysis, the majority states that "the misrepresentation relates to" the retirement plan and that there is a "relationship between the lawsuit and the special retirement plan." *Ante,* at 621. Of course, that the misrepresentation and therefore the lawsuit relates to the plan does not prove that the *law* relates to the plan.

and very general law of fraud—a law that encompasses *any fraud,* not just fraud relating to employers who deceive senior employees about potential future benefits. For this reason, the Georgia fraud *law* manifestly neither directly nor indirectly affects any ERISA plan, and is therefore distinguishable from the preempted law analyzed in *McClendon.*

As the majority concedes, the Georgia fraud law "does not involve the existence of a pension plan...." *Ante,* at 621. Nor does the Georgia law "make[] specific reference to" a pension plan. *See McClendon,* —— U.S. at ——, 111 S.Ct. at 483. Nor is the law "premised on" the existence of a pension plan. *See id.* Finally, the *law* upon which Sanson relies does not necessarily require him to plead the existence of a pension plan, necessarily require a court to find the existence of a pension plan, or necessarily require a finding that the employer wanted to cheat Sanson from his pension benefits.[4] *See id.* All Sanson's law requires is that he prove fraud, whatever that fraud may be. I submit that *McClendon* therefore does not govern this case. In fact, *McClendon* explicitly stated that it was not dealing with a case like Sanson's: "We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.*

## II.

The majority correctly acknowledges that *"McClendon* recognized certain limits to ERISA's preemption clause: that a law normally would not be preempted if the statute did not require the establishment or maintenance of an ongoing plan, or if a statute makes no reference to, or functions irrespective of, a plan." *Ante,* at 621. To refute my position that Georgia's fraud law "functions irrespective" of ERISA plans and is therefore not preempted, the majority adopts a "but-for" relationship test. Ac-

cording to the majority, if a plaintiff's lawsuit would not exist "but-for" a pension plan, that lawsuit is preempted by ERISA. *E.g., ante,* at 621 ("[T]he statute would not apply to this case without the existence of the retirement plan.").

I disagree with such a test for ERISA preemption. To preempt a cause of action, it is not enough that the particular facts of a plaintiff's claim happen to fortuitously involve a pension plan. Consider the employer who sexually harasses the female manager of a company's pension plan. Her state law harassment claim would obviously not be preempted by ERISA simply because the harassment statute might "not apply to [her] case without the existence of the retirement plan." *See ante,* at 621. Instead, her claim could be pursued because the harassment law would not necessarily require her to prove the existence of a plan, even if the law did require her to prove that the plan is what provided her with employment at the company.

The same is true in this case. The Georgia law of fraud only requires proof of a misrepresentation,[5] and not necessarily proof of a misrepresentation *about an ERISA plan.* Apparently, the majority would not have had any difficulty if the benefit misrepresented had been the availability of a new Oldsmobile automobile instead of the availability of a special retirement program. But why should the substance of GM's misrepresentation matter? The state fraud law utilized by Sanson does not portend to operate according to the content of the fraud; instead, all material frauds are equally actionable. Whether GM lies about a special retirement plan benefit or an Oldsmobile automobile benefit, the state law at issue still provides a cause of action.

This was not true about the law found to be preempted in *McClendon.* If the employer in *McClendon* fired the employee to avoid giving him the company Oldsmobile, the employer would not have a lawsuit

---

4. Of course, in this case Sanson might in fact plead the existence of his employer's pension plan. But the facts of his case require him to do that, not Georgia's law of fraud.

5. *See, e.g., Eckerd's Columbia, Inc. v. Moore,* 155 Ga.App. 4, 270 S.Ed.2d 249, 250 (1980).

under the judicial cause of action created by the Texas Supreme Court. Unlike this case, the law analyzed in *McClendon* only allowed suits against employers who fired employees to avoid paying pension benefits; it did not specifically, or even generally, encompass the firing of employees to avoid giving them cars. For this reason, the fraud law in this case does operate irrespective of the existence of a pension plan, even if the wrongful discharge cause of action in *McClendon* does not.

Accordingly, I believe that the mere fact that a plaintiff's proof of a material misrepresentation may involve the availability of a benefit (and that benefit happens to be a special retirement plan, rather than an Oldsmobile) should not be enough to preempt his putative fraud claim. Just as a sexual discriminatee would not lose her harassment claim solely because she might prove she was employed by a pension plan, Sanson should not lose his fraud claim solely because he might prove that his managers lied about future ERISA benefits. Both claims would not exist if a pension plan did not exist. But for me, that kind of "but-for" factual relationship is too tenuous to properly invoke the preemptive effect of ERISA.

### III.

As a final note, it is important to realize that the difference in result between this case and *McClendon* is particularly disturbing. A careful review of *McClendon* in juxtaposition with the instant case demonstrates what troubles me. The judicially created cause of action in *McClendon* would have been preempted without a textual analysis of ERISA's preemption section because ERISA provided the plaintiff with an effective parallel federal cause of action. *See McClendon*, — U.S. at — — —, 111 S.Ct. at 484–86; *see also* 29 U.S.C. §§ 1140, 1132(a)(3), 1132(e)(1) (1988) (providing an ERISA cause of action for participants alleging that their employment was terminated to prevent the vesting of their pension benefits). That is not true in this case. Sanson has no parallel ERISA cause of action; indeed, the majority relies upon that fact in affirming the district court's refusal to allow Sanson leave to amend his complaint. *Ante*, at 621.

Thus, the policy advanced in *McClendon* and served by ERISA's preemptive force—forcing plaintiffs to assert federal causes of action in order to ensure uniform pension law and in order to adequately notify employers about pension obligations—is entirely absent in this case. Allowing Sanson's claim would not conflict with (or even duplicate) federal law because no parallel federal lawsuit exists. And the only notification offered to employers is that they may lie to future retirees about potential future benefit plans without fear of repercussions, as long as the fraud at issue involves misrepresentations as to the very existence of a special retirement plan such that the fraud occurs in advance of any plan's existence. In this way, the combination of the majority's holdings—that Sanson's state cause of action is preempted by ERISA even while ERISA denies him any alternative remedy—is disappointingly pernicious to the very goals and desires that motivated Congress to enact pension laws in the first place.

In concluding I acknowledge the sage observation of the Fifth Circuit in *Gonzales v. Prudential Insurance Co.*, 901 F.2d 446 (5th Cir.1990), that "any court forced to enter the ERISA preemption thicket sets out on a treacherous path." *Id.* at 451–52. Perhaps I have entered the thicket and lost the path that my brothers have found and followed. However, if nothing else is clear it is that the "path" is not; obviously the Supreme Court needs to do some serious bushhogging in the ERISA preemption thicket.

I would reverse the district court's determination that Sanson's cause of action is preempted by ERISA. For this reason, I respectfully dissent.