**Robert BARR, Plaintiff,**

v.

**AMERICAN CYANAMID COMPANY, a Maine corporation, Defendant.**

No. C91–1220Z.

United States District Court, W.D. Washington, at Seattle.

Dec. 8, 1992.

Herman L. Wacker, Sara E. Feldman, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for plaintiff.

Thomas V. Harris, Merrick, Hofstedt & Lindsey, P.S., Seattle, Wash., for defendant.

## ORDER

ZILLY, District Judge.

THIS MATTER comes before the Court on plaintiff Robert Barr's motion for summary judgment (docket no. 17) and defendant American Cyanamid Company's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, for summary judgment (docket no. 22). The Court, having considered the parties' motions, and all papers filed in support of and in opposition to such motions, and having heard oral argument on November 23, 1992, hereby DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

*Background*

Plaintiff Robert Barr ("Barr") began working for American Cyanamid as a pharmaceutical salesman in 1956. He ultimately became one of the top pharmaceutical salesmen in the Rocky Mountain sales region for Lederle Laboratories, a division of American Cyanamid. In 1989, Barr began to contemplate retirement. He was aware that other large companies were implementing early retirement programs due to the weak economy. Accordingly, he began to ask management level employees whether any such program was under consideration at American Cyanamid. In each and every case, Barr was told that no such plan was under consideration. *See* Barr Affid. (docket no. 19) at 3, ¶¶ 7, 8.

Barr decided to retire on September 30, 1990. On September 24, 1990, Barr and his wife flew to corporate headquarters in Wayne, New Jersey for an exit interview with Walter Barauskas, Personnel Manager for Lederle Laboratories. Barauskas was responsible for employee benefits and pensions, among other duties. At that

meeting, Barr explicitly asked Barauskas whether any early retirement plan was then under consideration. According to Barr, Barauskas answered that there was no such plan being considered by the company at that time. *See* Barr Affid. (docket no. 19) at 3–4, ¶¶ 9, 10. Barr's retirement became effective on September 30, 1990.

On October 19, 1990, the Company announced an early retirement program called a "Voluntary Severance Opportunity" ("VSO"). The program was adopted to give workers an incentive to retire earlier than they had planned. The parties agree that had Barr still been employed by the company on October 19, 1990, he would have been eligible for the program. Under the VSO, Barr would have received approximately $75,000 in additional severance benefits.

Plaintiff Barr now moves for summary judgment, claiming that there are no genuine issues of material fact and that the undisputed facts show that he is entitled to recover on either his fraud or negligent misrepresentation claim. The defendant moves to dismiss, claiming that plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), and since there is no cause of action under ERISA for this type of claim, plaintiff cannot recover as a matter of law. Defendant argues further that even if the Court should find that ERISA does not preempt the plaintiff's claims, plaintiff's claims should still be dismissed because he cannot establish the requisite elements of his fraud or misrepresentation claims. Because the Court concludes that plaintiff's claims are preempted by ERISA, this Order will not address the sufficiency of plaintiff's state law claims.

*Discussion*

### I. ERISA PREEMPTION: GENERAL PRINCIPLES

ERISA expressly provides for the preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). This preemption clause is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). Consistent with that purpose, "the phrase 'relate to' [is] given its broad common-sense meaning." *Id.* at 47, 107 S.Ct. at 1553. "A law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). Thus, "a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474, 484 (1990).

The Supreme Court recently confirmed the breadth of ERISA preemption in *McClendon*, 498 U.S. 133, 111 S.Ct. 478. The Court stated that the "pre-emption clause is conspicuous for its breadth," and reiterated that "[i]ts 'deliberately expansive' language was 'designed to establish pension plan regulation as exclusively a federal concern.'" *McClendon*, 498 U.S. at 138, 111 S.Ct. at 482, 112 L.Ed.2d at 483 (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 56–58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356, 364 (1990) and *Pilot Life*, 481 U.S. at 46, 107 S.Ct. at 1552). Applying these principles, the *McClendon* Court concluded that a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under an ERISA-covered plan was preempted under ERISA. The Court found that for plaintiff to prevail, he had to plead, and the court had to find, that an ERISA plan existed and the employer had a pension-defeating motive in terminating the employment. Because the Court's inquiry "must be directed to the plan," the Supreme Court held that the cause of action related to an ERISA plan and was, therefore, preempted. *Id.* 498 U.S. at 142–44, 111 S.Ct. at 485.

The Ninth Circuit, following the Supreme Court's directive, has also expanded the scope of ERISA preemption. In *Olson v. General Dynamics Corp.*, 960 F.2d 1418 (9th Cir.1991), *cert. denied,* — U.S. —,

112 S.Ct. 2968, 119 L.Ed.2d 588 (1992), the Ninth Circuit affirmed a district court's summary judgment ruling that plaintiff's state law claim of fraud "relate[d] to" an employee benefit plan and was therefore preempted by ERISA. Plaintiff Olson was an employee with the Range Systems product line of General Dynamics from 1955 to 1986, at which time General Dynamics sold that line to Amex Systems, a subsidiary of Allied–Signal Inc. At the time of the sale, executives of both General Dynamics and Amex told Olson and other Range Systems employees that they would be offered jobs with Amex. The President of Amex told the Range Systems employees: "I commit to you that in no way will you be injured. On the bottom line, you will be equal or better to your present position." This statement was made to Olson and other employees before Olson decided to accept Amex's job offer.

Olson accepted the job with Amex in 1986. In 1988, Amex sold the Range Systems product line to SAIC, where Olson worked until his retirement. Olson participated in an employee benefit plan while he was employed by each of these three companies—General Dynamics, Amex and SAIC. Olson filed suit in state court against the three companies claiming that the benefits he received upon retirement from SAIC were less than he would have received had he retired from General Dynamics, and alleging that the level of benefits he would receive upon retirement was misrepresented to him at the time Range Systems was sold by General Dynamics to Amex.

The *Olson* court concluded that given the Supreme Court's directive that ERISA's preemption provision is to be construed broadly, it was difficult to see how Olson's fraud claim could be found not to "relate to" an employee benefit plan. *Id.* at 1421. The court stated that the district court's conclusion that Olson's allegations "relate to" an employee benefit plan was a straightforward application of the standard established by the Supreme Court: "To state his claim in the most favorable manner, Olson is alleging that, upon retirement, he received benefits from Amex and SAIC that were 'considerably less' than the benefits General Dynamics and Amex led him to believe he would receive." *Id.* This claim clearly "has a connection with" and makes "reference to" a benefit plan. *Id.*

## II. ERISA PREEMPTION: EARLY RETIREMENT CASES

There are several cases which have dealt with the issue of whether a state law claim for fraud or misrepresentation arising from a company's representations concerning the availability of early retirement is preempted by ERISA. All of these cases have held that such claims are preempted.

The very recent Eleventh Circuit case of *Sanson v. General Motors Corp.*, 966 F.2d 618 (11th Cir.1992), presents factual circumstances similar to the present case. In *Sanson*, the plaintiff alleged that General Motors fraudulently represented to him that benefits under a special retirement program would not be offered to Lakewood assembly plant employees. Relying upon that representation, Sanson voluntarily retired under the standard provisions of GM's early retirement program. Sanson claimed that but for the representation, he would have continued his employment until it would have been clearer whether the special retirement program would be offered to Lakewood employees. Shortly after Sanson's retirement, GM offered the special program to certain eligible employees, including those at the Lakewood plant. Sanson immediately contacted GM and demanded that his retirement benefits be increased to the level that the special program provided. GM denied his request and Sanson then sued.

Sanson sought to recover the enhanced retirement benefits and compensatory and punitive damages. GM moved for summary judgment, asserting that ERISA preempted Sanson's state law claim. Initially, the district court denied GM's motion, holding that the state law claim was not preempted. The district court then reconsidered the issue in light of the Supreme Court decision in *McClendon*, which expanded the scope of ERISA preemption. Upon consideration of *McClendon*, the dis-

trict court in *Sanson* held that the plaintiff's claims were preempted by ERISA. The court of appeals affirmed.

The Eleventh Circuit held that "[b]ased upon the Supreme Court's interpretation and application of ERISA in *McClendon*, the district court properly applied *McClendon* to hold that federal law preempts Sanson's state law claims." *Sanson*, 966 F.2d at 621. The Court stated:

> The existence of a pension plan subject to ERISA is a critical factor in both cases. It was critical in establishing liability under the state's wrongful discharge law in *McClendon*. In this case, the misrepresentation relates to Sanson's retirement benefits available under GM's special retirement plan. *The measure of damages would be the amount of benefits Sanson would have received under the retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan.*

*Id.* (emphasis added). The court concluded that plaintiff's "general fraud claim under a non-pension-based state law" was preempted because "[a]lthough the fraud statute does not involve the existence of a pension plan, the statute would not apply to this case without the existence of the retirement plan." *Id.* at 620, 621.

Barr contends that *Sanson* is not applicable to his case. He claims that the significant difference between *Sanson* and this case is that in *Sanson*, GM already had a special severance plan in existence. Plaintiff contends that in this case there was no plan in existence at the time the fraud and misrepresentations occurred. Since there was no plan in existence, plaintiff argues that its claims do not "relate to" a plan. In so arguing, plaintiff relies in part on *Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985). Barr also claims that *Scott* indicates that the Ninth Circuit would not follow the Eleventh Circuit's analysis in *Sanson*.

In *Scott,* plaintiffs brought a number of claims against their employer claiming that it had conspired with a successor employer to hire the employees on terms less favorable than they had at Gulf, thereby depriving them of prospective benefits with their new employer. Thrifty, the new employer, had no severance plan and therefore the Gulf employees lost severance benefits that they had accumulated at Gulf, as well as benefits they would have accumulated while working for Thrifty. The court held that the plaintiffs' claims were not preempted by ERISA, stating:

> The claim for prospective benefits does not allege the denial of benefits under a benefit plan; rather, it alleges that Gulf's tortious actions prevented the existence of such a plan in plaintiff's employment with Thrifty. It does not allege the violation of duties created by any welfare plan; rather it alleges the violation of Gulf's duties as a past employer.

*Id.* at 1505. The *Scott* court was also concerned that if Scott's claims were held to be preempted, he would not have any available remedy. *Id.* at 1506. Ninth Circuit courts have subsequently rejected such arguments as a basis for allowing state law claims. *See Olson*, 960 F.2d at 1422–23.

Plaintiff reads *Scott* as holding that actions concerning the deprivation of *prospective* or *future* benefits are not preempted by ERISA. However, the Ninth Circuit has stated that *Scott* cannot be read so broadly. In *Olson*, the plaintiff argued, among other things, that the *Scott* decision required the court to find that his fraud claims, based on misrepresentations about future benefits made at the time his employer-company was sold but before Olson accepted a job with the new company, were not preempted. Olson argued that *Scott* established a rule that claims for prospective benefits are not preempted by ERISA. The *Olson* court rejected that argument and implied that the holding in *Scott* was narrower:

> [T]he only reason that the claim for prospective benefits was held not to be preempted [in *Scott*] was because the company for which the plaintiff-employees worked did not have an employee benefit plan. After noting that a claim cannot 'relate to' a plan that does not

exist, we allowed the employees to proceed with their tort claim because it was based upon the conduct which led to the non-existence of such a plan.

*Olson*, 960 F.2d at 1421. The *Olson* decision makes clear that, contrary to plaintiff's assertion, claims for prospective benefits are not outside the scope of ERISA preemption.

Plaintiff argues nevertheless that his claims are not preempted because the alleged misrepresentations made by American Cyanamid were made prior to the adoption of the early retirement incentive program. Since there was no early retirement plan in effect at the time the alleged misrepresentations were made, plaintiff claims that such misrepresentations could not possibly "relate to" an ERISA plan. Plaintiff finds support for his position in the unpublished Ninth Circuit decision of *Odneal v. Pacific Gas & Electric Co.*, 948 F.2d 1293 (9th Cir.1991).[1]

The *Odneal* case presents facts very similar to those in the present case. Odneal was a long-term employee of Pacific Gas & Electric Co. ("PG & E"). Odneal heard rumors at PG & E that management was considering varying methods of downsizing the workforce, including possible implementation of an early retirement incentive program. During the summer and fall of 1986, PG & E's management issued several statements indicating that an early retirement plan might be instituted and assured its employees that all facts would be presented "openly and candidly." According to Odneal, even though PG & E's senior management was considering such a plan, PG & E's personnel manager in Odneal's division told him during the summer of 1986 that there would be no early retirement program. Odneal, convinced that there would be no such program, decided to retire. On or around October 1, 1986, Odneal gave written notice of his retirement,

effective November 1, 1986. On December 17, 1986, PG & E amended it retirement plan to adopt the "Voluntary Retirement Incentive Program." PG & E made the plan retroactive for employees retiring *after* November 1. Odneal was therefore ineligible to participate in the program.

The district court held that Odneal's state law breach of contract, fraud and misrepresentation claims were preempted by ERISA. The court of appeals affirmed. The court of appeals stated that the relevant inquiry was whether there was an ERISA-covered benefit plan, to which defendant's wrongful conduct related at the time the conduct occurred. Odneal asserted that ERISA did not preempt his state law claims because the special incentive program did not come into effect until November 1986, after the misrepresentations were made. The court found, however, that the special retirement program was not a *new* plan but rather an amendment to the existing retirement plan and, therefore, plaintiff's state law claims were preempted. In reaching its conclusion, the court relied upon *Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755 (5th Cir.1990).

In *Lee*, plaintiffs who were participants in DuPont's ERISA-covered retirement plan retired one month before DuPont adopted an early retirement incentive plan. Prior to retirement, the plaintiffs had asked their managers if such a plan was being considered and were told it was not. The plaintiffs brought state law claims of fraud and negligent misrepresentation against DuPont, alleging that if they had known about the program, they would have delayed their retirements so as to obtain the extra benefits. The Fifth Circuit held that such claims were preempted. The court stated:

> [P]laintiffs' approach would result in different preemption treatment for employer-to-employee misrepresentations de-

---

**1.** The Court advised the parties of the *Odneal* decision prior to oral argument and requested that counsel address the issues raised in that decision, despite the fact that *Odneal* is unpublished. The Court finds the *Odneal* case to be closely on point, and its analysis helpful given the confusing and sometimes inconsistent case law on ERISA preemption. Because *Odneal* is unpublished, it is not controlling authority and the Court will not rely upon it in deciding this case. Nevertheless, the Court believes the *Odneal* decision is significant and therefore discussion of the issues it raises is warranted.

pending on whether the misrepresentation concerns, on the one hand, purportedly presently provided for retirement benefits under the employer's ERISA plan or, on the other hand, retirement benefits that will (or will not) be provided for in a future amendment *or supplement* to the plan. We see no valid basis for such a difference in preemption treatment. The fact that the [early retirement] program was not adopted until after the plaintiffs' retirement is irrelevant to this suit's character as an action that relates to their former employer's pension plan and interferes with the exclusively federal regulatory scheme.

*Id.* at 758 (emphasis added).

The Ninth Circuit in *Odneal* agreed with the Fifth Circuit that "amendments to an existing ERISA plan are part and parcel of the plan administration over which ERISA provides exclusive regulation." The *Odneal* court also explained why it makes sense to treat employers who make misrepresentations about the prospects for a new plan differently from employers who make misrepresentations about an amendment to an existing plan. The Court stated that for preemption purposes, the distinction is logical:

Before a proposed plan actually comes into existence, there is no ERISA plan. Any misrepresentations remain governed by state law. Once an ERISA plan is established, however, the exclusive, comprehensive scheme of federal regulation mandated by ERISA preempts any state law regulation of the plan. Odneal appears to be arguing that, for purposes of preemption, the relevant inquiry is not whether the plan at issue was in existence, but whether the specific benefit was. Such a course unduly limits the scope of ERISA preemption.

The present case differs from *Odneal* in that American Cyanamid's incentive retirement program was not an *amendment* to the current pension plan.[2] Using *Odneal*'s analysis, the issue then becomes whether the voluntary incentive program was an entirely new program or a supplement to an existing ERISA-covered plan. If it was a new plan, not yet in existence at the time the alleged misrepresentations were made, *Scott* suggests that plaintiff's claims would not be preempted. On the other hand, if the incentive retirement program was a supplement to an existing plan, providing additional benefits to retirees already covered by the company's pension plan, plaintiff's state law claims would be preempted because the alleged misrepresentations "related to" an *existing* ERISA plan.

## III. ARE PLAINTIFF'S CLAIMS PREEMPTED BY ERISA?

■ At oral argument, counsel agreed that there is no dispute concerning the facts surrounding American Cyanamid's adoption of the incentive program. Therefore, there is no genuine issue of material fact precluding summary judgment. The parties also agree, however, that it is not clear whether the incentive retirement program is a new ERISA-covered plan or a supplement to an existing ERISA plan.[3] They ask the Court to make this determination based on the undisputed facts concerning the program's adoption and implementation.

The Court finds that American Cyanamid's voluntary retirement incentive program is closer to a supplementary benefit program than a new ERISA plan in that it provided additional benefits to those already provided by the company's pension plan and was made available only to employees who were vested under the company's pension plan. *See, e.g.,* Document entitled *"Program to Provide a Voluntary Severance Opportunity,"* part of Exhibit F to Harris Declaration (docket no. 24) ("Since only being offered to employees whose Age and Service equal "65", all would be vested in the Employees Retirement Plan under the "Rule of 65" and

---

2. Defense counsel acknowledged at oral argument that the incentive retirement program was not an amendment to an existing pension or benefit plan.

3. The parties agree in either case that the incentive retirement program is governed by ERISA because it provides employee welfare benefits.

therefore eligible to continue benefits as a retired employee of the Company."); Dau Depo., Exhibit D to Plaintiff's Brief in Support of Summary Judgment (docket no. 18), at 36 (Dau, Director of Compensation and Benefits for American Cyanamid, corrects Barr's attorney and clarifies that there was no plan to change the retirement plan; he accepts the plaintiff's lawyer's characterization of the voluntary retirement program as a "the addition of an early retirement option"); Dau Depo., Exhibit G to Harris Decl. (docket no. 24), at 25–26 (confirms that "severance payments would be paid in addition to whatever benefits a person was qualified to receive from the company's pension plan").

Moreover, it makes little sense in the context of this case to view the voluntary severance incentive program as a distinct and unrelated (and hence "new") ERISA plan. This is not a case where the defendant company had no pension/benefit scheme in place at the time the alleged misrepresentations were made. In such cases, it is logical to find that there is no ERISA preemption because the company has no ERISA plan. As the court in *Odneal* indicated, state law would govern those misrepresentations because the exclusive, comprehensive scheme of federal regulation mandated by ERISA has not yet been implicated. In this case, however, American Cyanamid had in place at all relevant times a comprehensive employee benefit and pension scheme governed exclusively by ERISA. The voluntary severance program merely provided additional benefits to those already available to vested participants in the company's pension plan. The fact that the additional benefits were provided for in a separate benefit program rather than through amendment of the existing pension plan should not be the dispositive factor in the Court's preemption analysis. To focus on this factor alone would elevate form over substance and minimize the purposes of ERISA's preemption provision. As the Supreme Court stated in *McClendon*, § 514(a) was intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the

administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." *McClendon*, 498 U.S. at 142, 111 S.Ct. at 484, 112 L.Ed.2d at 486.

Allowing state based actions like the one at issue here would subject plans and plan sponsors to burdens not unlike those that Congress sought to foreclose through § 514(a). Particularly disruptive is the potential for conflict in substantive law. It is foreseeable that state courts, exercising their common law powers, might develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds with the goal of uniformity that Congress sought to implement.
*Id.*

Applying the analysis in *Odneal* and *Lee*, the Court concludes that plaintiff's state law fraud and misrepresentation claims are preempted by ERISA. The voluntary severance opportunity program provided supplemental benefits to employees already covered by an ERISA pension plan. Thus, plaintiff's claims arising from alleged misrepresentations concerning the availability of these supplemental benefits were "related to" an ERISA plan.

■ The Court's conclusion that plaintiff's state claims are preempted by ERISA is also based on a more fundamental ERISA preemption analysis. Given the Supreme Court's directive that ERISA's preemption provision is to be construed broadly, it is difficult to see how Barr's fraud and misrepresentation claims could be found not to "relate to" an ERISA plan. Barr is claiming that due to misrepresentations made by American Cyanamid, he lost his opportunity to receive additional ERISA-covered retirement benefits. As in *Olson*, this is a claim "that he should be receiving a level of benefits which he is not," a claim that clearly "relates to" an ERISA plan. *Olson*, 960 F.2d at 1421. Furthermore, Barr requests as damages, among other things, the amount of benefits

he would have received under the ERISA-covered voluntary severance program had he not retired prior to the adoption of that program. There is no question that here, as in *McClendon* and *Olson,* if there were no ERISA-covered benefit plan, plaintiff would have no cause of action. Under these circumstances, the Court necessarily finds that plaintiff's claim "has a connection with" and makes "reference to" an ERISA benefit plan. Accordingly, the Court concludes that plaintiff's state law claims are preempted by ERISA.

Plaintiff does not argue that in the event his state law claims are preempted, he has a cause of action under ERISA. To the contrary, plaintiff concedes that ERISA does not provide him with any relief. Based on this fact, there are no claims remaining in the case and the defendant is entitled to summary judgment.

The Court is mindful of the fact that no federal or other remedy now exists for the conduct alleged by the plaintiff, and that Mr. Barr may not assert the state causes of action he could have asserted prior to the enactment of ERISA. Unfortunately, the plaintiff's fate is not unique. The federal courts have routinely found state tort and implied contract remedies preempted by ERISA even when ERISA provides no substitute for the state cause of action. See *Olson,* 960 F.2d at 1424 (Reinhardt, C.J., concurring) and cases cited therein. The Court agrees with Judge Reinhardt that "[t]he proliferation of ERISA preemption cases ... raises a question as to whether ERISA is having an effect that is substantially contrary to that intended by those who favored its adoption. This is a matter which Congress may wish to examine carefully." *Id.* at 1425.

IT IS SO ORDERED.