NATIONAL ALCOHOLISM PROGRAMS/COOPER CITY, FLORIDA, INC., a Florida corporation, d/b/a High Point, Plaintiff,

v.

PALM SPRINGS HOSPITAL EMPLOYEE BENEFIT PLAN and Administrative Services, Inc., a Florida corporation, Defendants.

No. 92–1565–CIV.

United States District Court,
S.D. Florida,
Miami Division.

June 3, 1993.

Michael P. Scian, Wampler, Buchannan & Breen, P.A., Miami, FL, for plaintiff.

James W. Crabtree, Smathers & Thompson, Charlotte, NC, Karen Brimmer, Stephens, Lynn, Klein & McNicholas, P.A., Miami, FL, for defendant Administrative Services, Inc.

John L. Zavertnik, Sinclair, Louis, Heath, Nussbaum & Zavertnik, P.A., Miami, FL, for defendant Palm Springs.

## ORDER GRANTING DEFENDANT PALM SPRINGS HOSPITAL EMPLOYEE BENEFIT·PLAN'S MOTION TO DISMISS COUNT III AND DENYING MOTION TO DISMISS COUNTS I & II

MORENO, District Judge.

THIS CAUSE came before the Court upon the Defendant Palm Springs Hospital Employee Benefit Plan's Motion to Dismiss the Complaint of National Alcoholism Programs/Cooper City, Florida, Inc. filed on October 2, 1993. This matter was referred to U.S. Magistrate Judge Barry L. Garber who issued a Report and Recommendation dated January 19, 1993.

THE COURT has considered the Motion, responses, the Report and Recommendation of Judge Garber, the objections and responses to the report, and the pertinent portions of

the record and has otherwise been fully advised in open court.

The parties have not objected to Judge Garber's recommendation that the court deny the Motion to Dismiss Count II of the Complaint. Accordingly, the Motion to Dismiss COUNT II is DENIED for the reasons stated in Judge Garber's Report and Recommendation.

Furthermore, the Motion to Dismiss COUNT I for failure to provide the name of the parties and to attach documents referenced in the Complaint is DENIED AS MOOT as the U.S. Magistrate Judge issued an order on November 23, 1992 granting the Plaintiff's Motion for Order Permitting Disclosure of Confidential Records of the Patient.

For the reasons that follow, the Motion to Dismiss COUNT III of the Plaintiff's Complaint is GRANTED.

### FACTS

National's complaint alleges the following facts: National treated a patient who was an employee of Palm Springs Hospital and who was covered for hospitalization, medical, and other health care benefits under the Defendant Palm Springs Plan. The Defendant Administrative Services provided administrative services to the Palm Springs Plan and acted as the agent for the Palm Springs Plan.

Prior to treating the patient at its facility, National confirmed with representatives for the Defendants that the proposed treatment was covered under the patient's employee benefit plan. Based on representations that the treatment was covered and that National was a covered facility, National admitted the patient. The patient executed an assignment of benefits to National, and National brought suit against the Defendants after its claim for benefits under the plan was denied.

Count I of the complaint seeks recovery of benefits under the terms of the plan and alleges the existence of an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. National's promissory estoppel claim under Count II of the complaint alleges that National reasonably relied on the assurances of the Defendants that the patient was covered by the plan and that it would be paid for treatment of the patient. Count III of the complaint claims that the Defendants' representations and subsequent refusals to pay for treatment constitute violations of the Florida Unfair Trade Practices Act, Fla.Stat. §§ 501.201–501.213.

Palm Springs' Motion to Dismiss Count III asserts that ERISA preempts National's claim under the Unfair Trade Practices Act.

### STANDARD FOR MOTION TO DISMISS

■ When considering a motion to dismiss, the court accepts as true those facts alleged in the plaintiff's complaint. Furthermore, the facts contained in the complaint are to be construed in the light most favorable to the plaintiff. *See Little v. City of North Miami,* 805 F.2d 962, 964 (11th Cir. 1986) (citing *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp.,* 711 F.2d 989, 994–95 (11th Cir. 1983)); *Eddy v. City of Miami,* 715 F.Supp. 1553, 1555 (S.D.Fla.1989) (citing *Radovich v. National Football League,* 352 U.S. 445, 448, 77 S.Ct. 390, 392, 1 L.Ed.2d 456 (1957)).

The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (citations omitted).

### ANALYSIS

The parties have agreed that an employee benefit plan governed by ERISA exists in this case. Palm Springs argues that National's claim for violation of the Florida Unfair Trade Practices Act is preempted by ERISA and therefore should be dismissed by this court. The issue before the court is whether ERISA preempts a claim made under the Florida Unfair Trade Practices Act by a hospital which provided health care services to a patient allegedly covered under the ERISA plan. The court agrees with Palm

Springs and holds that ERISA preempts the state law claim.[1]

█ With a few inapplicable exceptions, ERISA preempts all state laws "insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). However, ERISA does not preempt any state law which regulates insurance, banking, or securities. 29 U.S.C. § 1144(b)(2)(A) ("saving clause").[2] Therefore, the court's preemption inquiry requires two steps. First, the court must consider whether the particular state law "relate[s] to" the employee benefit plan. If the law does relate to the plan, the court must next determine whether the law falls within the ERISA "saving clause" as a law regulating insurance. If the state law relates to an employee benefit plan and is not "saved" from preemption by 29 U.S.C. § 1144(b)(2)(A), then ERISA preempts it, and a claim under the statute must be dismissed.

█ Designed to protect consumers from suppliers who commit deceptive trade practices, the Florida Unfair Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla.Stat. §§ 501.202(2), 501.204. A "consumer transaction" is defined as "a sale ... or other disposition of an item of goods, a consumer service, or an intangible to an individual for purposes that are primarily personal, family, or household...." Fla.Stat. § 501.203(1). The remedy available to any consumer bringing an individual action is actual damages. Fla.Stat. § 501.211(2).

A.  The Florida Unfair Trade Practices Act relates to the ERISA employee benefit plan.

The Supreme Court has noted the expansive sweep of ERISA's preemption clause. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The phrase "relate[s] to" has been interpreted broadly to mean " 'if [the state law] has a connection with or reference to such a plan.' " *Metropolitan Life*, 471 U.S. at 739, 105 S.Ct. at 2389 (quoting *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900). Additionally, the Supreme Court has held that the preemption clause is not limited only to those " 'state laws specifically designed to affect employee benefit plans.' " *Dedeaux*, 481 U.S. at 47–48, 107 S.Ct. at 1553 (quoting *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900).

The Eleventh Circuit, however, has recognized that "some state laws affect employee benefit plans too tenuously to be considered fairly as relating to employee benefit plans." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir.1987) (citing, *inter alia, Bowen v. Bowen*, 715 F.2d 559, 560–61 (11th Cir.1983) (per curiam) (garnishment of spouse's benefit plan income to enforce alimony payment not preempted)). Therefore, when determining if the state law relates to the employee benefit plan, the court must also consider whether the connection of the Florida Unfair Trade Practices Act claim to the employee benefit plan is too tenuous for the state claim to be preempted.

The Supreme Court and the Eleventh Circuit recently have examined the ERISA pre-

---

1.  Since the court is dismissing the claim under the Florida Unfair Trade Practices Act because of ERISA preemption, it does not address whether National's complaint states a cause of action cognizable under the state statute. This issue was addressed by the parties in the Motion to Dismiss and responses. However, the issue was not addressed by the Magistrate Judge's Report and Recommendation and was not argued before the District Court Judge.

2.  However, ERISA also provides the following in what has been named the "deemer clause":

Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

emption issue and have provided guidance regarding whether a state claim is in fact too tenuously related to an ERISA plan to be preempted. The Supreme Court has addressed whether ERISA preempts an employee's state common law claim that his employer wrongfully discharged him to avoid contributing to the employee's pension fund. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In *McClendon*, the Court pointed out that it was "not dealing with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* 498 U.S. at 139, 111 S.Ct. at 483. Instead, the existence of the benefit plan was a critical factor in the plaintiff's ability to establish liability under the Texas statute at issue. The statute required the plaintiff to prove the existence of both an ERISA plan and the pension-defeating motive of the employer. The Court held that the statute related to the ERISA plan because it required the Court's inquiry to be directed to the plan. *Id.*

The Court concluded that the ERISA preemption provision could not be read so restrictively as only to preempt state laws which regulate the terms and conditions of ERISA-covered plans. Instead, the Court held that the state statute related to the benefit plan, and thus was preempted by ERISA, because the statute specifically required the Court to inquire into the benefit plan. *Id.* 498 U.S. at 140–42, 111 S.Ct. at 484.

The Eleventh Circuit has applied the principles of *McClendon* to determine whether ERISA preempts a fraudulent misrepresentation claim under state law. *Sanson v. General Motors Corp.*, 966 F.2d 618 (11th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). In *Sanson*, the plaintiff Sanson alleged that his employer had fraudulently represented to him that special retirement benefits would not be offered to the group of employees of which the plaintiff was a member. Relying on this information, Sanson voluntarily retired under

the employer's early retirement program. Discovering that shortly after his retirement certain employees were offered the additional benefits, Sanson claimed that he would have continued his employment absent his employer's representation regarding the special benefits. *Id.* at 619.

Applying *McClendon*, the Eleventh Circuit affirmed the district court's conclusion that ERISA preempted the state law claim even though the general fraud statute was not a pension-based law and did not involve the existence of a pension plan.[3] The court recognized that in both Sanson's case and *McClendon*, the existence of an ERISA pension plan was critical in establishing liability under state law. Additionally, the measure of damages available to Sanson would equal the benefits he would have received under the special retirement plan. According to the Eleventh Circuit, "[s]uch a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan." *Id.* at 621.

■■■■ Similarly, National would have no claim under the Florida Unfair Trade Practices Act if the ERISA plan did not exist. The Act was designed to protect consumers from deceptive and unfair trade practices and specifically requires the existence of a consumer transaction. National has alleged in Count III that it is a consumer and that the payment of premiums in exchange for hospital and medical expense coverage is a consumer transaction. [Complaint at 5]. Without the consumer transaction involving this ERISA plan, there would be no state law claim.

Moreover, the amount of damages which National would recover under the state claim equals the amount allegedly due under the plan. As discussed earlier, the damages available to an individual consumer under the Florida Act are actual damages. Fla.Stat. § 501.211(2). The Florida courts have interpreted "actual damages" suffered as a result of a violation of the Unfair Trade Practices

---

**3.** The district court originally had held that the state law claim was preempted by ERISA because the state law had only a tenuous effect on employee benefit plans. However, the court re-

considered its opinion following the Supreme Court's holding in *McClendon*. *Sanson*, 966 F.2d at 619–20.

Act to mean damages attributable to diminished value of goods or services received. Consequential damages, however, are not available under the Act. *See Urling v. Helms Exterminators, Inc.*, 468 So.2d 451 (Fla. 1st DCA 1985); *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984), *review denied*, 461 So.2d 114 (Fla.1985).

Applying this analysis to National's claim under Count III, the amount of damages which would be available to National if it were to succeed would be based on the amount of potential plan benefits due under the ERISA plan. As the Eleventh Circuit stated in *Sanson*, the fact that National's potential damages would be based on the amount due under the ERISA plan demonstrates the relationship between National's claim and the ERISA plan.

Under the principles announced by the Supreme Court in *McClendon* and the Eleventh Circuit in *Sanson*, the state law claim in this case clearly "relate[s] to" the ERISA plan and therefore is preempted by ERISA. National argues, however, that its state law claim is not preempted and relies on the Fifth Circuit decision of *Memorial Hosp. Sys. v. Northbrook·Life Ins. Co.*, 904 F.2d 236 (5th Cir.1990).[4] In *Memorial Hospital*, the hospital telephoned the benefits provider to verify that coverage of the patient seeking treatment was in effect. Relying on the benefits provider's representations confirming coverage, the hospital treated the patient, who later assigned her benefits to the hospital. After being informed that the patient in fact was not eligible for benefits, the hospital filed suit asserting claims including deceptive and unfair trade practices under the Texas Insurance Code.[5] *Id.* at 238.

The Fifth Circuit held that the state law claim was not preempted by ERISA. The court rejected the defendant's argument that

the claim related to an ERISA plan because the measure of damages would equal, in part, the amount of benefits to be received absent the misrepresentation. It concluded that "this incidental relation to an ERISA plan is insufficient on these facts to require a finding of preemption." *Id.* at 247.

The court in *Memorial Hospital* instead focused on the hospital's independent status and the fact that the hospital was neither seeking benefits from the plan nor asserting improper processing of claims. *Id.* at 250. The Fifth Circuit found that the claim under the Texas statute therefore was "independent of the plan's actual obligations under the terms of the insurance policy and in no way seeks to modify those obligations." *Id.* at 250 (citation omitted).

While the facts of *Memorial Hospital* are similar to the facts in the case at issue, this court declines to follow the reasoning of the Fifth Circuit decision in light of the language contained in both *McClendon* and *Sanson*. The relevant inquiry in this case is whether National's claim under the Florida Unfair Trade Practices Act "relate[s] to" the ERISA plan alleged in Count I of National's complaint. National's status as a third-party provider of health care services does not alter Congress' intent that the scope of ERISA preemption is to be broad and to extend to state *claims* relating to benefit plans.[6]

The court finds that the Florida Unfair Trade Practices Act relates to the benefit plan, and National's claim under the Act will be preempted unless it falls under the "saving clause" of ERISA.

B. **The Florida Unfair Trade Practices Act falls outside of the ERISA saving clause.**

■ The Supreme Court has adopted a two-step approach to determine whether a

---

**4.** The *Memorial Hospital* case was decided by the Fifth Circuit on June· 15, 1990, prior to the Supreme Court's December 3, 1990 decision in *McClendon*.

**5.** Article 21.21 of the Texas Insurance Code provides a cause of action to any individual who has been injured by enumerated unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. Tex.Ins. Code Ann. art. 21.21, § 16(a) (1981).

**6.** Count III realleges the general allegations of the complaint including the allegation that the patient assigned benefits to National. The court's conclusion that the state law claim relates to an ERISA plan would be unchanged even if National were to amend the complaint to eliminate the allegation in Count III of the assignment of benefits.

state statute regulates insurance within the meaning of the ERISA saving clause. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (1987) (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)). First, the court must take a "common-sense view" of the saving clause language and inquire whether the statute regulates insurance. A common-sense understanding of the phrase "regulates insurance" requires not only that a particular statute have an impact on the insurance industry but also that the statute is directed specifically toward the insurance industry. *Id.* 481 U.S. at 50, 107 S.Ct. at 1554.

Second, the Supreme Court has used case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, when interpreting the saving clause. Three criteria have emerged from the cases to determine whether a practice falls under the "business of insurance" for purposes of the McCarran–Ferguson Act:

> [f]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry.

*Dedeaux,* 481 U.S. at 48–49, 107 S.Ct. at 1553 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (emphasis in original)).

Applying the analysis established by the Supreme Court, the court concludes that the Florida Unfair Trade Practices Act does not fit into the ERISA saving clause. First, the Florida statute neither has an impact on the insurance industry nor is directed specifically toward the insurance industry. Instead, the statute is a general consumer protection statute designed to promote three policies:

(1) To simplify, clarify, and modernize the law governing consumer sales practices.

(2) To protect consumers from suppliers who commit deceptive and unfair trade practices.

(3) To make state regulation of consumer sales practices consistent with established policies of federal law relating to consumer protection.

Fla.Stat. § 501.202. More importantly, the statute specifically states that it does not apply to "[a]ny person or activity regulated under laws administered by the Department of Insurance or the Florida Public Service Commission...." Fla.Stat. § 501.212(5).[7]

Second, the Florida statute fails to meet *any* of the three criteria of the McCarran–Ferguson test. The statute does not have the effect of transferring or spreading a policyholder's risk, does not concern an integral part of the policy relationship between insurer and insured, and does not limit the practice of insurance to entities within the industry.

### CONCLUSION

The court concludes that (1) the Florida Unfair Trade Practices Act, Fla.Stat. §§ 501.201–501.213, relates to the Palm Springs ERISA plan under 29 U.S.C. § 1144(a) and (2) the Unfair Trade Practices Act falls outside of the ERISA saving clause, 29 U.S.C. § 1144(b)(2)(A). Accordingly, National's claim as contained in Count III of the Complaint is preempted by ERISA, and the Motion to Dismiss COUNT III is GRANTED.

DONE AND ORDERED.

---

**7.** The court previously has recognized that it is not reaching the issue of whether National would be able to state a cause of action under the Florida Unfair Trade Practices Act. See footnote 1.