**John William LOTT, et al., Plaintiffs,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. 93–T–202–N.**

United States District Court,
M.D. Alabama, N.D.

Aug. 31, 1993.

Lynn W. Jinks, III, L. Bernard Smithart, Union Springs, AL, Andrew J. Smithart, III, Tuscaloosa, AL, for plaintiffs.

Steven Troy Marshall, Maynard, Cooper & Gale, P.C., Montgomery, AL, Lee E. Bains, Jr., Sarah E. Yates, Maynard, Cooper & Gale, P.C., Birmingham, AL, for Metropolitan Life Ins. Co.

Thomas H. Keene, Rushton, Stakely, Johnston & Garrett, Montgomery, AL, for Daniel L. Firth.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiffs, seventeen employees of the Bonnie Plant Farm, a division of Alabama Farmer's Cooperative, Inc. ("AFC"), initiated this lawsuit in the Circuit Court of Bullock County, Alabama, against defendants Metropolitan Life Insurance Company ("Metropolitan Life") and Daniel L. Frith, a Metropolitan Life agent, claiming that the insurance company fraudulently induced them to buy life insurance. Plaintiffs asserted a number of state-law claims: misrepresentation, fraudulent suppression, negligence, wantonness, conspiracy to defraud, and breach of fiduciary duty. Defendants removed the case to this court pursuant to 28 U.S.C.A. §§ 1441, 1331, contending that this court has subject-matter jurisdiction because plaintiffs' action is "super-preempted" under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461, commonly known as ERISA. This cause is now before the court on plaintiffs' motion to remand.

In a removal action, the defendant has the burden to plead the basis for jurisdiction. *Fowler v. Safeco Ins. Co. of America*, 915 F.2d 616, 617 (11th Cir.1990) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir.1988) (burden on defendant to prove facts necessary to establish preemption), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). A defendant may submit affidavits, depositions, or other evidence to support removal. *Fowler*, 915 F.2d at 617. For the reasons set forth below, the court concludes that plaintiffs' motion to remand will be granted.

## I. BACKGROUND

In 1987, AFC adopted a flexible benefits plan, or "cafeteria plan," which provided an opportunity for eligible AFC employees to use pre-tax dollars to pay their one-half share of the applicable premium for their

health benefits obtained pursuant to their employment with AFC.[1] AFC paid the other half of the premium. By electing to participate in the cafeteria plan, employees would enjoy a tax savings because they would use pre-tax dollars, rather than after-tax dollars, to pay their one-half share of the premiums. The tax savings resulted in an increase in the employees' take-home pay. AFC also received tax savings when its employees participated in the cafeteria plan. For those employees who participated in the plan, AFC would have to pay less in federal taxes, such as matching FICA taxes.

In addition, as an aside to the cafeteria plan, AFC also gave its employees an option to use their increased take-home pay to purchase life insurance from Metropolitan Life. AFC agreed to deduct the premium payments for the life insurance from the employees' pay checks and to remit the premiums to Metropolitan Life. AFC would not pay any part of the life insurance premiums. Metropolitan Life would process all of the life insurance claims.

In most instances, AFC allowed Metropolitan Life agents to explain both the cafeteria plan and the life insurance option to AFC employees on AFC premises during business hours. Metropolitan Life Agents also solicited life insurance during these presentations and enrolled AFC employees in both the cafeteria plan and the life insurance plan.

According to the complaint, defendant Daniel Frith, acting as a Metropolitan Life agent, told the plaintiffs that the tax savings from the cafeteria plan would not be available to them unless they participated in Metropolitan Life's plan. He also told the plaintiffs that the life insurance would be free to them. Plaintiffs claim that they signed up for the life insurance based on these representations. In fact, as explained above, AFC employees could have received the tax savings from participating in the cafeteria plan without purchasing life insurance. They simply would have received more take-home pay.

## II. DISCUSSION

■ The question before the court is whether plaintiffs' lawsuit has been properly removed to federal court as a case "arising under" the laws of the United States pursuant to 28 U.S.C.A. §§ 1441, 1331. Ordinarily, a cause of action arises under federal law only when the plaintiff's "well-pleaded complaint" raises a federal question. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65–67, 107 S.Ct. 1542, 1548–49, 95 L.Ed.2d 55 (1987). The Supreme Court has determined, however, that the uniform regulatory scheme established by ERISA "so completely preempt[s]" the area of employee benefit plans that an ERISA preemption defense to a state-law claim provides a sufficient basis for removal of the lawsuit to federal court, notwithstanding the traditional limitation imposed by the well-pleaded complaint rule. *Id.* at 64–67, 107 S.Ct. at 1546–48. Thus, if plaintiffs' state-law claims "relate to" an ERISA plan within the meaning of ERISA's preemption provision, 29 U.S.C.A. § 1144(a), these claims are preempted by ERISA and converted to federal questions, at least for the purposes of removal jurisdiction. *Id.* at 60, 66, 107 S.Ct. at 1544, 1547–48.

Removal would be proper here: (1) if the Metropolitan Life plan is an "employee benefit plan" within the meaning of ERISA, and plaintiffs' state-law claims "relate to" the life insurance plan; or (2) if the cafeteria plan is an "employee benefit plan" within the meaning of ERISA, and plaintiffs' state-law claims "relate to" the cafeteria plan.

### A. Existence of an ERISA Plan

■ The plaintiffs recognize that the AFC cafeteria plan is an employee welfare benefit plan as defined by ERISA, 29 U.S.C.A. § 1002(1), and that they are participants in that plan. They disagree with defendants, however, that the Metropolitan Life plan is also an ERISA plan. Section 1002(1) defines an "employee welfare benefit plan" as "any plan, fund, or program ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... benefits in the event of ... death."

---

1. The complaint states that the plan was adopted in 1984. This date is obviously a typographical error. The plan itself, which was submitted to the court, states that it was adopted in 1987.

■ Plaintiffs contend that the life insurance plan falls within the "safe-harbor" regulation promulgated by the Department of Labor, which excludes from ERISA's scope employee benefit programs that entail little employer involvement. The "safe-harbor" regulation provides:.

"[T]he terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employee or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs."

29 C.F.R. § 2510.3–1(j). In order to fit within the "safe-harbor" regulation, a plan must meet all four criteria. *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 n. 6 (5th Cir.1990); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). The court is of the view that the Metropolitan Life plan meets all four criteria.

First, it is undisputed that AFC made no contributions to the life insurance plan; AFC employees paid the entire premium themselves. Second, participation in the life insurance plan was voluntary. Defendants appear to recognize this point in arguing that

AFC employees "understood that they could benefit from participating in the AFC Plan without having to purchase Metropolitan life insurance." Nevertheless, defendants contend that the plaintiffs themselves claim that participation in the life insurance program was not voluntary. Contrary to defendants' contention, plaintiffs specifically allege that participation in the life insurance plan was voluntary. *See* Complaint ¶ 38. Plaintiffs claim that, despite the true facts, defendants misrepresented that participation in the life insurance plan was required in order for employees to receive the tax savings from participation in the AFC cafeteria plan.

Whether the life insurance plan meets the third criterion, non-endorsement of the plan by AFC, is a close question. Defendants note that AFC publicized the life insurance program to its employees, collected premiums through payroll deductions, and remitted them to Metropolitan Life. Had AFC limited its involvement in the life insurance program to these functions, it would have been clear that AFC had not have endorsed the program. These functions are specifically allowed under the regulation without being considered as endorsing the program. *See Brundage–Peterson v. Compcare Health Services Ins. Corp.*, 877 F.2d 509, 510 (7th Cir. 1989) (an employer could distribute advertising brochures from insurance providers, answer questions concerning insurance, and deduct premiums from payroll and remain within safe harbor regulation); *Cf. Kanne*, 867 F.2d at 492 (merely advertising a group insurance plan does not establish an ERISA plan). AFC's involvement with the life insurance program, however, went beyond these functions. Significantly, in most instances, AFC did not have its own managers explain the cafeteria plan and the Metropolitan Life plan, but rather had Metropolitan Life agents explain the two plans to AFC employees.[2] In addition, Metropolitan Life agents enrolled AFC employees in both the cafeteria plan and the life insurance plan. Although, as stated above, this additional involvement by AFC in the Metropolitan Life plan presents a close question, the court is not con-

---

2. The court is not making a determination as to what defendant Frith actually explained to plaintiffs.

vinced that AFC endorsed the life insurance plan within the meaning of the safe-harbor regulation.

Determining whether the life insurance plan meets the fourth criterion, whether AFC received any consideration in connection with the life insurance program, is also a close question. AFC did not receive any compensation for payroll deduction services from the life insurance plan. However, when employees signed up for the insurance plan, AFC received tax savings from their simultaneous participation in the cafeteria plan. AFC also saved the expense of having its own managers go to its various divisions and explain the cafeteria plan; Metropolitan Life agents went to the various divisions instead at the expense of Metropolitan Life. The court is nevertheless convinced that benefit AFC received was too indirect and tenuous to conclude that the Metropolitan Life plan falls outside the safe-harbor regulation.

## B. Preemption

ERISA's preemption clause explicitly preempts "any and all State laws insofar as they may now or hereafter *relate* to any employee benefit plan." 29 U.S.C.A. § 1144(a) (emphasis added). Because the court does not find for purposes of subject-matter jurisdiction that the life insurance plan is an ERISA plan, the court need not reach the second issue of whether plaintiffs' state-law claims "relate to" the life insurance plan. However, because the parties agree that the cafeteria plan is an ERISA plan, the court must reach this second issue as to that plan.

■ In general, a particular state-law claim "relates to" an ERISA plan if the state-law claim has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). A state law may be preempted even if it has only an indirect effect on benefit plans. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 149, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990). However, if the state-law claim affects the plan in "too tenuous, remote, or peripheral a manner," the state claim does not "relate to" the plan. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

■ Plaintiffs claim that defendants fraudulently induced them to buy life insurance by misrepresenting that plaintiffs were required to buy the life insurance in order for plaintiffs to receive the tax savings under the cafeteria plan. The plaintiffs say that they seek compensatory and punitive damages but do not seek any benefits under either the life insurance plan or the cafeteria plan. Although plaintiffs allege a number of state-law claims, their claims boil down to essentially one for fraud in the inducement. In *Farlow v. Union Central Life Ins. Co.*, 874 F.2d 791 (11th Cir.1989), the plaintiffs claimed that the defendants, an insurance company and its agent, fraudulently induced them to switch health insurance policies by falsely representing that the new ERISA plan provided the same coverage but with a lower deductible. After discovering that the new policy did not provide the same coverage, plaintiffs sued for fraudulent misrepresentation. The Eleventh Circuit found that ERISA preempted plaintiffs' fraudulent misrepresentation claims because defendants' conduct was "intertwined with the refusal to pay benefits" under an ERISA plan—that is, the fraudulent inducement was with regard to an ERISA plan. *Id.* Here, unlike in *Farlow*, the inducement was with regard to a non-ERISA plan, the Metropolitan Life plan. Thus, plaintiffs' fraud in the inducement claims are not preempted.

Defendants point to the Supreme Court's opinion in *Ingersoll–Rand* in arguing that plaintiffs' claims "relate to" an ERISA plan. In *Ingersoll–Rand*, the plaintiff claimed that his employer fired him four months before his pension vested in order to avoid making contributions to his pension fund. He asserted a state common law wrongful discharge claim against his employer. The state common law specifically allowed a cause of action against employers who discharged employees to avoid contributing to the employee's pension fund. *Ingersoll–Rand*, 498 U.S. at 135–36, 111 S.Ct. at 481. The Supreme Court held that ERISA preempted the plaintiff's state-law claim. The Court found that the state-law claim expressly conflicted with § 510 of ERISA, 29 U.S.C.A. § 1140, which makes it unlawful for an employer to discharge an ERISA plan participant "for the

purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." *Id.* at 142–45, 111 S.Ct. at 485–86.

The Court also found that the state claim "related to" an ERISA plan because "in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment." *Id.* at 140, 111 S.Ct. at 483. The Court noted as well that "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law," *id.* at 139–40, 111 S.Ct. at 483, and that "there simply is *no* cause of action if there is no plan." *Id.* at 140, 111 S.Ct. at 484. Although the Court used broad language in deciding that the state-law claim related to an ERISA plan, the Court was careful to note that it was not "dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." *Id.* at 139, 111 S.Ct. at 483. The Court had previously ruled that some claims under generally applicable laws, such as fraud in the inducement, related to an ERISA plan and were therefore preempted, but had not analyzed the "relate to" requirement in terms of whether the plaintiff had to plead the existence of an ERISA plan in its complaint. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 43–47, 107 S.Ct. 1549, 1551–53, 95 L.Ed.2d 39 (1987). Thus, the Court's disclaimer in *Ingersoll–Rand* that it was not dealing with a generally applicable statute indicates that its analysis applied only to laws that specifically referred to benefit plans and did not extend to generally applicable laws.

The Eleventh Circuit applied *Ingersoll–Rand*'s broad language to a state-law claim for fraudulent misrepresentation in *Sanson v. General Motors Corp.,* 966 F.2d 618 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). The plaintiff, Sanson, alleged that he retired under defendant General Motor's standard early retirement program due to General Motor's fraudulent representation that he would not receive benefits under a special retirement program. *Id.* at 619. After Sanson retired, General Motors offered the special retirement program to certain employees and

refused Sanson's request to increase his retirement benefits to the level that the special program provided. *Id.* Sanson asserted a state-law fraudulent misrepresentation claim against General Motors, seeking to recover the enhanced retirement benefits. *Id.* Applying *Ingersoll–Rand,* the Eleventh Circuit held that ERISA preempted Sanson's state-law claim because "[t]o prevail on his state law claims, Sanson would have to prove the existence of an ERISA plan." *Id.* at 620. Defendants here contend that plaintiffs must likewise prove the existence of the cafeteria plan, which plaintiffs concede is an ERISA plan, to prevail on their claims. In *Sanson,* however, the court held that Sanson needed to prove the existence of an ERISA plan because

> "[t]he measure of damages would be the amount of benefits Sanson would have received under the retirement plan. Such a determination of damages demonstrates the relationship between the lawsuit and the special retirement plan."

*Id.* at 621. In contrast, the measure of damages here is wholly unrelated to the benefits under the cafeteria plan. Plaintiffs' damages, if any, flow not from the cafeteria plan but rather from the Metropolitan Life plan, which, of course, is not an ERISA plan.

■ Nevertheless, defendants here suggest that because the alleged fraudulent representations involved the cafeteria plan, plaintiffs must prove the existence of an ERISA plan in order to prevail. Neither *Ingersoll–Rand* nor *Sanson* should be read as broadly as defendants suggest. Although the Supreme Court suggested that a state-law claim is preempted if the plaintiff must plead the existence of an ERISA plan, this language, like the words "relate to," should not be read too expansively. *See Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 128 (7th Cir.1992). For example, in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the issue before the Court was whether ERISA preempted a state-law action for garnishment of employee welfare benefits. Although the claim clearly required the plaintiff to plead the existence of an ERISA plan, the Court held that the

garnishment action was not preempted. The Court also noted that ERISA did not preempt lawsuits against ERISA plans for "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." *Id.* at 833, 108 S.Ct. at 2187. With respect to these claims, there is no cause of action if there is no ERISA plan. Thus, the mere fact that a plaintiff must plead the existence of an ERISA plan in order to prevail on a state-law claim is not enough to preempt the claim.

Plaintiffs' claims here clearly involve the cafeteria plan and the life insurance plan and plaintiffs pleaded the existence of both plans in their complaint. However, the existence of an ERISA plan is not a critical factor in establishing liability under plaintiffs' various claims. In making this determination, the court must heed the Supreme Court's admonition that the "question whether a certain state action is pre-empted by federal law is one of congressional intent. 'The purpose of Congress is the ultimate touchstone.'" *Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552 (citations omitted). Congress intended that ERISA's preemption provision would protect participants in employee benefit plans by "'eliminating the threat of conflicting and inconsistent State or local regulation of employee benefit plans.'" *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987) (citations omitted). The purpose of preemption is "to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations." *Id.* at 11, 107 S.Ct. at 2217.

In *Consumer Benefits Ass'n v. Lexington Ins. Co.,* 731 F.Supp. 1510, 1515 (M.D.Ala. 1990), this court identified three roughly-defined categories of cases in which the Supreme Court has found ERISA preemption. *See Robinson v. Fikes of Alabama, Inc.,* 804 F.Supp. 277, 281–82 (M.D.Ala.1992) (applying *Consumer Benefits* framework). The first category includes those claims which address an area specifically regulated by ERISA. Plaintiffs' claims here are all based on generally applicable laws. The second category includes those state-law claims for which ERISA provides a specific avenue of relief. ERISA does not provide a specific avenue of relief for plaintiffs' claims. Although plaintiffs make a claim for breach of fiduciary

duty, this breach is only as to the Metropolitan Life plan, a non-ERISA plan. The third category includes those state-law claims which fit into neither of the previous groups but which either: specifically refer to and would affect an ERISA plan; would contravene the structure or purpose of ERISA; would require a construction of the benefit plan; or would mandate an interpretation of the statutory duties of one of the parties to the plan. The Second Circuit has similarly found that laws that have been ruled preempted are "those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142, 146 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

Addressing plaintiffs' claims here would in no way further or frustrate the purposes of ERISA. Plaintiffs do not challenge any action taken by defendants in processing an ERISA claim, disbursing an ERISA benefit, or in administering an ERISA plan in any way. Plaintiffs do not claim any right under an ERISA plan itself, dispute its terms, or attempt to modify it. Plaintiffs' claims neither interfere with ERISA's goal of a nationally uniform administrative scheme nor subject defendants to conflicting regulations. As applied here, for example, Alabama's fraud law will not result in regulation of the cafeteria plan or its administration at all. Accordingly, plaintiffs' claims affect the cafeteria plan, if at all, in "too tenuous, remote, or peripheral a manner" to "relate to" the plans within the meaning of ERISA and are not preempted. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

Defendants finally contend that plaintiffs' claims are preempted because plaintiffs in effect seek to recover "additional benefits" under the life insurance plan. In their complaint, plaintiffs allege that defendants falsely represented that the life insurance would be free. Defendants attempt to characterize the offer of free life insurance as an "additional benefit." In *Robinson v. Fikes of Ala-*

*bama, Inc.,* 804 F.Supp. 277 (M.D.Ala.1992), this court held that a plan participant's attempt to recover additional or supplemental benefits from his employer was preempted. *Id.* at 284 (citing *Smith v. Dunham–Bush,* 959 F.2d 6, 11 (2d Cir.1992)). The participant sought the additional benefit or additional monies based on a separate contract with his employer. *Id.* Plaintiffs here, however, are not seeking any additional benefits or, indeed, any benefits at all under an ERISA plan. As found by the court, the Metropolitan Life plan is not an ERISA plan. Therefore, the court rejects defendants' contention concerning "additional benefits."

### III. CONCLUSION

Finally, this court would emphasize that the conclusion it reaches today goes only to the question of the subject-matter jurisdiction of this court and does not go the merit of defendants' defense that plaintiffs' claims are preempted by ERISA. This court's conclusion based on the limited evidence before it is not binding on the state court. Defendants may still pursue the ERISA-preemption defense after remand to state court, and, indeed, after further development of the facts, including an evidentiary hearing, the state court may still find the defense has merit. *Glasser v. Amalgamated Workers Union Local 88,* 806 F.2d 1539, 1540 (11th Cir.1986) (per curiam); *see also Soley v. First National Bank of Commerce,* 923 F.2d 406, 408–09 (5th Cir.1991).

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs' motion to remand to state court, filed on March 15, 1993, be and it is hereby granted and that, pursuant to 28 U.S.C.A. § 1447(c), this cause is remanded to the Circuit Court of Bullock County, Alabama for want of subject-matter jurisdiction.

The clerk of the court is DIRECTED to take the appropriate steps to effect the remand.