**Marlon GRAY, et al., Plaintiffs,**

v.

**NEW YORK LIFE INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. 94–AR–2471–S.**

United States District Court,
N.D. Alabama,
Southern Division.

March 14, 1995.

Ronald O. Gaiser, Jr., Gaiser & Associates, Richard C. Barineau, Barineau & Barineau, Birmingham, AL, for plaintiffs.

N. Lee Cooper, John N. Bolus, Sarah E. Yates, Maynard Cooper & Gale, Birmingham, AL, Loren Kieve, Debevoise & Plimpton, Washington, DC, for New York Life Ins. Co.

Cavender C. Kimble, LeeAnn M. Pounds, Balch & Bingham, N. Lee Cooper, John N. Bolus, Sarah E. Yates, Maynard Cooper & Gale, Birmingham, AL, for Gregory B. Trapp.

### MEMORANDUM OPINION

ACKER, District Judge.

No one is surprised that more than one case based on alleged ERISA super-preemption simultaneously finds it way from a state court to this court. The ERISA removal knees continue to jerk. The court refers the reader to the opinion entered on March 10, 1995 in *Hensley, et al. v. Philadelphia Life Insurance Company, et al.,* 878 F.Supp. 1465 (N.D.Ala.1995). Much of what this court said in *Philadelphia Life* could just as well be said in the above-entitled case. This court suggests that the reader read *Philadelphia Life,* if for no other reason than to get into the proper mood.

In the instant case, New York Life Insurance Company and its agent, Gregory B. Trapp, were named as defendants in a straightforward state court fraud complaint filed by Marlon Gray and four others, alleging misrepresentation in the sale to them of policies of whole life insurance. Plaintiffs charge that Trapp deliberately misdescribed what he was selling as a "retirement savings plan" into which they were to make periodic payments.

After defendants were served with the complaint in the state court, they promptly and predictably removed to this court, alleging that plaintiffs' claims relate to an ERISA plan (29 U.S.C. §§ 1001, *et seq.*) created by plaintiffs' employer, Elite Leasing, Inc., and thus became a federal question removable pursuant to 28 U.S.C. § 1441(b). Just as promptly, plaintiffs moved to remand.

This court gave the parties sixty days within which to discover from each other whatever facts they could to prove whether a qualified ERISA plan is, in fact, here implicated. The court reasoned that a simple fraud claim brought pursuant to state law cannot "relate to" an ERISA plan for the purposes of the supersedure provision in 29 U.S.C. § 1144(a), that is, IF an ERISA plan, in fact and law, does not exist, or IF the "safe harbor" provisions of 29 C.F.R. § 2510.3–1(j) exempt the plan.

### Facts Pertinent to the Existence of a Non–Exempt ERISA Plan

■ The deposition which plaintiffs took of defendant Trapp provides all of the information needed for deciding the jurisdictional question here presented. Trapp is the son of the owner and president of Elite Leasing, Inc., plaintiffs' employer. At no time pertinent was Trapp an employee, owner or representative of Elite Leasing, although he purported to act as its corporate representative for the purposes of a Rule 30(b)(6) deposition noticed by plaintiffs during limited dis-

covery. He was a New York Life agent who plaintiffs claim to have glowingly described to them a "retirement savings plan" that turned out to be no more than five separate whole life insurance policies paid for by the insureds. The success of this removal first depends upon Elite Leasing's being the creator and sponsor of a plan containing the requisites of an employee benefit plan under ERISA. Assuming *arguendo* that there is such a plan, the second question is: Is the plan exempt under regulations lawfully promulgated by the Secretary of Labor?

Trapp had no employment agreement with Elite Leasing. When he met with plaintiffs he did not identify himself in any way with Elite Leasing. No employee of Elite Leasing was present during Trapp's presentation. Trapp's only connection with Elite Leasing was that his mother was its president and owner. Elite Leasing did not give the so-called "plan" a name or issue a summary plan description. It did not pay any portion of the premiums. Neither did it receive any cash benefit from the transaction.

From the briefs submitted by the parties, it becomes immediately apparent that defendants comprehend the significance of the "safe harbor" provisions of 29 C.F.R. § 2510.3–1(j), which read:

> For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form

of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Again, assuming only for the sake of argument that this is an ERISA plan, the whole life insurance policies about which these plaintiffs complain must meet all four of the qualifications set forth in 29 C.F.R. § 2510.3–1(j), if they are to escape the preemptive force of ERISA and thus eliminate a basis for an ERISA removal.

Defendants quickly admit the existence of the first two of these "safe harbor" requirements, namely, (1) that the employer made no contributions and (2) that participation by the employees was purely voluntary. Defendants insist, however, that the third and fourth "safe harbor" requirements are not here present. Plaintiffs, and now the court, respectfully disagree with defendants on both of these crucial contentions.

■ A corporate executive who simply allows her son, who happens to be a life insurance agent, to make a pitch to the company employees, has not thereby "endorsed" the son's "plan." For aught appearing the mother did not even know what the son's "plan" consisted of, much less anything about ERISA. Instead, Elite Leasing's function with respect to this proposed insurance program (plaintiffs could describe it as Trapp's trap) was simply to *"permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions ... and to remit them to the insurer."* 29 C.F.R. § 2510.3–1(j) (emphasis supplied). These words of the third requirement for exempting a plan from ERISA preemption fit this set of circumstances perfectly. To the extent the affidavit submitted by Trapp's mother is not hearsay it tends to contradict her son's sworn testimony, and the court finds it not credible.

Perhaps a bit more difficult than the finding as to the existence of the first three items in 29 C.F.R. § 2510.3–1(j), is the question of whether the fourth requirement is met, namely, that the employer here received no

"consideration otherwise" in connection with the issuance of this insurance. New York Life and Trapp argue valiantly, if vainly, for a finding that some consideration existed other than cash. This court is unwilling to strain with them to find such a consideration. A percentage of premium in the pocket of an insurance salesman who happens to be the son of the corporate owner cannot legitimately be called consideration to the corporation. Defendants' claim of "otherwise" consideration is grasping at the proverbial straw. There is nothing about these sales of insurance that can be considered a bona fide advantage to anybody except Trapp, New York Life, and plaintiffs if they had wanted life insurance. If this so-called "plan" can be said to have been worth a peppercorn to Elite Leasing, then every simple permission granted to an insurance salesman to approach an employee constitutes a valuable consideration to the employer. This reasoning would render totally meaningless the fourth requirement of 29 C.F.R. § 2510.3–1(j). Defendants' argument boils down to this: (1) an insured employee is a happy employee; (2) a happy employee is a valuable asset to the employer. This "logic" fails to convince this court.

Because the five separate insurance policies purchased by plaintiffs are well within the "safe harbor" of 29 C.F.R. § 2510.3–1(j), there is no reason for the court to examine them in the aggregate for the indicia of a qualified ERISA plan *ab initio*. If these policies were looked at for these indicia as the court looked for them in *Philadelphia Life*, there would very probably be no ERISA plan needing "safe harbor."

After writing *Philadelphia Life*, this court discovered *Brown v. Commonwealth Nat. Life Ins. Co.*, 875 F.Supp. 800 (N.D.Ala.1995), which echoes both the above themes and those in *Philadelphia Life*, and with which this court agrees.

### Conclusion

Because the removing defendants have been unsuccessful in meeting their burden of proving the requisites for federal question jurisdiction under 28 U.S.C. § 1441(b), the case will be remanded by separate order.