Janice HRABE, Plaintiff,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant.

Civil Action No. 95–D–1290–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 15, 1996.

---

Tom Cutton, Birmingham, AL, for plaintiff.

Mark David Hess, Bert S. Nettles, Birmingham, AL, Mark E. Schmidtke, Valparaiso, IN, for defendant.

### MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is Defendant Paul Revere Life Insurance Company's ("Revere") motion to dismiss, or, in the alternative, motion for summary judgment ("Def.'s Br.") filed on March 14, 1996. Revere also filed a brief in support of its motion ("Def.'s Br.") on March 14, 1996. Plaintiff Janice Hrabe ("Hrabe") filed a brief in opposition ("Pl.'s Br.") to Defendant's dispositive motion on March 25, 1996. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Revere's motion is due to be granted.

### STATEMENT OF FACTS

Hrabe evidently became an employee of Blankenship, Lamar, Gilliland & Hicks ("BLGH") sometime prior to June 1992.[1] Pl.'s Compl. ¶ 7. Hrabe purchased a disability insurance policy ("disability policy") from Revere through an arrangement involving

---

**1.** The court is unsure of Hrabe's exact start date because neither party has disclosed this fact or other similar facts in their motions.

BLGH. Pl.'s Compl. ¶ 7; *See* Def.'s Br. at 1. BLGH offered a group of employee benefits in its Flexible Benefits Plan ("Flexible Plan"). Thomas P. Gilliland Dep. at 8–12, Ex. 3 at 8–10. On or about August 30, 1994, Hrabe was involved in an automobile accident which allegedly left her totally disabled. Pl.'s Compl. ¶ 9. In February 1995, Hrabe submitted a claim for disability benefits under the disability policy. *Id.* at ¶ 10. Revere informed Hrabe in a letter dated May 2, 1995, that her claim was denied beyond the period ending February 20, 1995, which allegedly resulted in a covered period of one week. Id. at ¶ 11; Pl.'s Br. at 1. Hrabe appealed this denial and Revere declined to provide additional benefits. Def.'s Br. at 1.[2]

On October 6, 1995, Hrabe filed a complaint alleging that Revere had committed a breach of contract and acted in bad faith in denying Hrabe's claim for disability benefits. Pl.'s Compl. ¶ 13–16. Hrabe brought her claims in this court alleging that jurisdiction was proper based on diversity of citizenship. *Id.* at ¶ 3–4. In its answer, Revere alleged that federal jurisdiction was proper not for diversity reasons but instead based upon 28 U.S.C. § 1331 (federal question jurisdiction) by virtue of 29 U.S.C. § 1132(e)(1), the ERISA jurisdictional provision. This fundamental difference is also reflected in Revere's motion to dismiss/motion for summary judgment which requests the court to dismiss or grant summary judgment in Revere's favor on both of Hrabe's state law claims. Def.'s Mot. Dismiss Alternative Mot.Summ.J. at 2. Revere contends that ERISA preempts both of Hrabe's claims leaving Hrabe with no viable claims and closing this matter.[3] Def.'s Br. at 2. Hrabe contends that Revere's logic is flawed because Hrabe's disability insurance is excluded from ERISA coverage by the "safe-harbor" regulation of the Department of Labor. Pl.'s Br. at 2; see 29 C.F.R. § 2510.3–1(j) (1995).

The court construes Revere's motion as a motion for summary judgment since it refers to matters outside the pleadings. Such a finding is made pursuant to Rule 12(b) of the Federal Rules of Civil Procedure which states that a motion to dismiss on 12(b)(6) grounds which includes matters outside the pleadings "shall be treated as one for summary judgment and disposed of as provided in Rule 56." The rule further directs that all parties shall be given a reasonable opportunity to "present all material made pertinent to such a motion." The court finds that Hrabe has had a sufficient opportunity to present such summary judgment materials as shown by Hrabe's citation of deposition testimony. Hrabe's titling her response as "Plaintiff's Brief in Opposition to Defendant's Dispositive Motion" is further evidence that Hrabe understood the nature of Revere's motion and had a reasonable opportunity to frame an appropriate response.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

---

**2.** The parties disagree over the validity of the review process. Hrabe insists that she provided medical information from her surgeon regarding her disability while Revere claims that it was unable to obtain objective medical information regarding Hrabe's alleged disability. Pl.'s Compl. ¶ 12; Def.'s Br. at 1. The veracity of these differing positions has no bearing on the outcome of this motion.

**3.** Revere does not address the viability of a claim for benefits which Hrabe could have brought in this action. Def.'s Br. at 2. Since neither Revere nor Hrabe address the validity of a claim for ERISA benefits under 28 U.S.C. § 1132, the court will not deal with the possibility of such a claim.

the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

Before the court is a simple dispute over the status of the disability policy. Hrabe insists that the disability policy is not covered by ERISA while Revere contends that the disability policy is an ERISA employee welfare plan. If the court finds that the disability policy is an ERISA plan, then Hrabe's state law claims will be preempted by the reach of ERISA's super-preemption. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Such a decision would leave Hrabe with no claims before this court because, as previously discussed, her complaint contains only state law claims. On the other hand, if the court finds that the disability policy is not an ERISA plan, then Hrabe may maintain her state law claims despite Revere's objections.

ERISA broadly preempts state law claims relating to employee benefit plans brought by ERISA participants and beneficiaries. 29 U.S.C. § 1144(a); *Pilot Life,* 481 U.S. at 45–47, 107 S.Ct. at 1551–53. Revere asserts that ERISA preempts Hrabe's state law claims because the claims "relate to" an employee benefit plan, i.e., the disability policy issued to BLGH. Hrabe argues that ERISA does not preempt her cause of action because the disability policy is not part of an employee benefit plan and, therefore, not covered by the provisions of ERISA.

■ To decide whether ERISA preempts Hrabe's state law claims, the court must first determine if an "employee welfare benefit plan" was established. 29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, . . . .

29 U.S.C. § 1002(1). In interpreting this statute, the Eleventh Circuit divides the definition of an "employee benefit plan" under § 1002(1) into five essential elements: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, . . ., unemployment or vacation benefits, . . .; (5) to participants or their beneficiaries. *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982).

Hrabe asserts that no employee benefit plan was established because the disability policy meets the ERISA "safe harbor" requirements.[4] The "safe-harbor" regulation promulgated by the Department of Labor provides:

[T]he terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employee or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1995). In order to fit within the "safe-harbor" regulation, a plan must meet all four criteria. *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir.1994); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 241 n. 6 (5th Cir.1990); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Jones v. Pioneer Life Ins. Co. of Ill.*, 858 F.Supp. 164 (M.D.Ala.1994); *Lott v. Metropolitan Life Ins. Co.*, 849 F.Supp. 1451 (M.D.Ala.1993).

■ Hrabe insists that all four of these criteria are met while Revere contends that the disability policy fails to meet several of the safe harbor requirements. Revere contends that it contributed to the disability policy purchased by Hrabe through the disability policy funding mechanism. Def.'s Br. at 13–14. Under the terms of the Flexible Plan, BLGH converted portions of participating employees' salary into plan benefits. *Id.* at 12. This conversion was performed on pre-tax salary dollars which meant that the employees did not pay tax on these dollars. *Id.* at 13. According to BLGH, this process also meant that BLGH could not treat these dollars as salary paid to employees and that these withholdings are, as a matter of law, employer contributions. *Id.* at 12–13 (citing Department of Treasury Proposed Regulation § 1.125–1 (Q and A–6)).

The court finds that Revere has not shown that BLGH contributed to the purchase of the disability policy. Despite Revere's contentions, the proposed treasury regulation does not conclusively state that BLGH's salary conversion plan are an employer contributions. For instance, the regulation states that a "salary reduction agreement" will result in employer contributions "only to the extent that the agreement relates to compensation that has not been actually or construc-

---

**4.** Hrabe does not dispute that the *Donovan* test is met and instead, centers her arguments on the safe harbor requirements. Pl.'s Br. at 2–4.

Thus, the court need not address the individual elements in the *Donovan* test and assumes that these elements are present.

tively received by the participant." Def.'s Br. at 14 (quoting Department of Treasury Proposed Regulation § 1.125–1 (Q and A–6)) (emphasis added). It is not clear to the court that BLGH employees are not in constructive receipt of their pre-tax dollars that are diverted to the Flexible Plan. Additionally, the cases cited by Revere do not convince the court that the salary conversion mechanism equates to an employer contribution. *See Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1343, 1345–46, 1346 n. 4 (11th Cir.1994) (holding safe harbor inapplicable where employer paid 55% of policy premiums); *Randol v. Mid–West Life Ins. Co. of Tenn.,* 987 F.2d 1547, 1552 (11th Cir. 1993) (holding that safe harbor provisions did not apply where employer both withheld premiums from employee wages and paid seventy five dollars ($75.00) per month towards employee policy premiums); *Brundage–Peterson v. Compcare Health Servs. Ins. Corp.,* 877 F.2d 509, 510 (7th Cir.1989) (noting that an employer could deduct premiums from payroll and remain within safe harbor regulation). Since BLGH paid no part of the employees premiums, the court finds that BLGH did not make a contribution to the payment of premiums under the Flexible Plan and that the first element of the safe harbor test is met.

■ Revere concedes that participation in the Flexible Plan was completely voluntary which means that the second element of the safe harbor test is met. See Def.'s Br. at 14 (" 'no contributions shall be required under the Plan from any Participant' " (quoting Master Flexible Benefit Plan (Thomas P. Gilliland Dep. Ex. 1, at 18.)). Revere's brief does not argue that BLGH received any consideration in connection with its role with the Flexible Plan. Therefore, the success or failure of Revere's motion for summary judgment revolves around the third element of the safe harbor test.

The third element is met when employers "permit the insurer to publicize the program to employees" but is not met when employers "endors[e] the program." A trio of recent Alabama district court decisions illustrate the difference between an employer who merely publicizes a benefit program and an employer who endorses a program. In *Lott v. Metropolitan Life Ins. Co.,* 849 F.Supp. 1451 (M.D.Ala.1993) (Thompson, C.J.), the court found that an employer had not endorsed a life insurance program offered separately from the employer's cafeteria benefit plan where the employer allowed the insurer to discuss the life insurance plan with employees and arrange for premiums to be deducted from the employees' take-home pay. While finding that the employer only publicized the plan, the court noted that the question was close since the employer went beyond the standard acts of merely publicizing the plan and collecting premiums for remission to the insurer. *Id.* at 1454–55.

In *Jones v. Pioneer Life Ins. Co. of Ill.,* 858 F.Supp. 164 (M.D.Ala.1994) (Albritton, J.), the court found that an employer had merely publicized a health insurance policy where the employer provided his employee with an insurance agent's business card and also allowed the company checking account to be drafted in exchange for the employee repaying the entire cost of the premiums. The *Jones* court noted that the purpose of the safe harbor factors is to avoid " 'employer involvement in the management or design of the program.' " *Id.* at 166. Most recently, in *Gray v. New York Life Ins. Co.,* 879 F.Supp. 99 (N.D.Ala.1995), the court found that the employer had not endorsed a retirement savings plan where the company owner/president merely allowed her son to solicit employees to enroll in the plan.

BLGH did more than merely allow Revere agents to publicize the disability policy to Hrabe and other employees. BLGH included the disability policy in its Flexible Plan as shown in the Summary Plan Description. Gilliland Dep. Ex. 3 at 8. The Summary Plan Description in Section III provided an overview of the Flexible Plan provisions including:

1. Insurance Premium Plan

You may elect to have your participation in certain insurance programs funded, with tax-free dollars through the Plan. Such insurance programs include:

–Accident and Health Insurance Plan

–Disability Insurance Plan

*Id.* The court finds that such a listing constitutes more than the mere publication of the disability policy. Instead, such listing of the disability policy is a direct endorsement of the disability policy. BLGH is, in essence, telling its employees that the disability policy provided by Revere is the BLGH disability policy since it is the only disability policy available to employees on a pre-tax premium basis.

As Revere explains in great detail, BLGH appointed a company administrator who administered the disability policy. *E.g.,* Def.'s Br. at 15. Despite the plan administrator's affidavit testimony that BLGH did not endorse the disability policy but only "permit[ted] [Revere] to publicize the program to employees, to collect premiums through payroll deductions and remit them to [Revere]", Donald C. Thomason Aff. ¶ 7, the court finds that BLGH did, in fact, endorse the disability plan. The court so finds not because of the plan administrator's subsequent deposition testimony but because the Flexible Plan endorses the disability policy in clear and unflinching language. To find otherwise would go against the intent of the safe harbor regulations as explained by the *Jones* court. BLGH undoubtedly played a major role in the design of the disability policy program by choosing the Revere policy as the official disability policy under the terms of the Flexible Plan. *See* Donaldson Dep. at 22 ("Q. So [BLGH employees] don't have any options—there is no other disability or health insurance policy ... that this firm offers to employees; is that correct? A. That is correct."). For these reasons, the court finds that Hrabe's reliance on the administrator's affidavit is misplaced and the third safe harbor factor is not satisfied. Therefore, the court finds that the disability policy is excluded from the ERISA safe harbor and Hrabe's state law claims are preempted since they relate to an ERISA plan.

### CONCLUSION

Based on the foregoing analysis, the court finds that Revere's motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.