**Willie M. LEVETT, Plaintiff,**

v.

**AMERICAN HERITAGE LIFE INSURANCE COMPANY, et al, Defendants.**

**Civil Action No. 97–D–198–N.**

United States District Court, M.D. Alabama, Northern Division.

June 18, 1997.

Lloyd W. Gathings, Birmingham, AL, for Willie M. Levett.

Robert W. Bradford, Jr., Jeffrey J. Bradwell, Montgomerey, AL, for American Heritage Life.

Roger S. Morrow, Joel Hartley Pearson, Montgomerey, AL, for Capital Risk and Ron Howard.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the Court is plaintiff's motion to remand filed March 20, 1997. Defendant American Heritage Life Insurance Company, Inc. ("American Heritage") filed a brief in opposition on April 4, 1997. Defendants Ron D. Howard ("Howard") and Capital Risk Management, Inc. ("Capital") also filed a brief in opposition on April 4, 1997. Plaintiff

filed a reply on May 20, 1997.[1]

## BACKGROUND

Plaintiff originally filed this action on January 16, 1997, in the Circuit Court of Elmore County, Alabama. Plaintiff claimed defendants had fraudulently induced him to purchase a disability insurance policy. Defendants removed the case to this Court on February 18, 1997, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants asserted that plaintiff's state-law fraud claim was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 et seq. and, thus, this Court had original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

Plaintiff is employed by A.E.S., Inc., in Tallasee, Alabama. Apparently, one of the benefits of employment at A.E.S. is the opportunity to purchase insurance with pre-tax wages through A.E.S.'s Section 125 Cafeteria Plan. A.E.S. deducts the cost of any insurance purchased through its Cafeteria Plan from an employee's paycheck. Defendants contend that plaintiff purchased the insurance policy at issue in this case through A.E.S.'s Cafeteria Plan. Plaintiff refutes this contention.

According to the plaintiff, in December 1994, he was informed by a co-worker that an insurance agent was at A.E.S.'s office selling "additional" disability insurance. Plaintiff went to the office and met with Howard, an agent for American Heritage. Howard told plaintiff that he was selling disability insurance which was "not under the Section 125 Cafeteria Plan, but was insurance available in addition to the Cafeteria Plan." Aff. of Willie M. Levett ("Levett Aff."). Plaintiff asserts that he was not given any documentation in conjunction with Howard's sales presentation. According to plaintiff, Howard told him the disability insurance "would pay [his] full salary if [he] was so disabled as to be unable to work after a two week period." Id. On the basis of these representations, plaintiff allegedly purchased the disability insurance.

Plaintiff's factual assertions are buttressed by the affidavits of Russell R. Benton ("Benton"), President of A.E.S. and Cathy Stonaker ("Stonaker"), Bookkeeper for A.E.S. Benton states that Howard approached him and asked if he could sell additional insurance to A.E.S.'s employees; Benton agreed. Benton asserts that this disability insurance was "in addition to and not included in [A.E.S.'s] Cafeteria Plan." Finally, Benton states that he played no role in the design, selection or administration of the disability insurance sold by Howard; A.E.S.'s sole function with respect to this insurance was to deduct premiums for its employee's paychecks. Stonaker, like Benton, states that she played no role in the selection, design or administration of the disability insurance plan. According to Stonaker, Howard would submit a list of employees who purchased disability insurance and the corresponding premium to be deducted from the employee's paycheck. Stonaker would then forward this list to A.E.S.'s accountant who would deduct the premiums from the employee's pay. Stonaker states that she cannot recall receiving or filing, in 1994, any employee waivers authorizing A.E.S. to withhold insurance premiums from their paychecks.

This version of the facts is contradicted by Howard's affidavit testimony. Howard states that he is President of Capital and a general agent for American Heritage. Howard claims that American Heritage disability insurance was selected by A.E.S. for inclusion in its Cafeteria Plan and that American Heritage disability insurance was the only disability insurance available under A.E.S.'s Cafeteria Plan. Although Howard and Capital assisted with the administration of the Cafeteria Plan, Howard claims that A.E.S.

---

1. Subsequent to the drafting of this opinion, Capital and Howard filed a second evidentiary submission in opposition to plaintiff's motion to remand. While the new evidence submitted by these defendants supports their account of the facts and conflicts with plaintiff's, it does not alter the Court's analysis. See Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.1983) (holding that Court must resolve issues of factual dispute in favor of the plaintiff).

was the Cafeteria Plan's official administrator. According to Howard, plaintiff was given documents explaining A.E.S.'s Cafeteria Plan and an American Heritage brochure explaining the coverage and limitations of American Heritage's disability insurance.

Plaintiff was injured on September 27, 1995, and was unable to return to work until December 4, 1995. According to Stonaker, plaintiff asked her how to file a disability insurance claim. Stonaker told plaintiff that he would have to contact American Heritage to make a claim and that the disability policy was plaintiff's personal insurance policy, not A.E.S.'s insurance policy. Without assistance from A.E.S., plaintiff obtained a claim form from American Heritage, filled it out and remitted the form to American Heritage. Plaintiff claims that American Heritage refused to pay plaintiff an amount equal to his full salary as Howard represented during his sales presentation.

## DISCUSSION

It is well-settled that the defendants, as the parties removing this action to federal court, have the burden of establishing federal jurisdiction. *Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996). Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand. *See Shamrock Oil and Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Diaz,* 85 F.3d at 1505.

It has long been the rule that federal question jurisdiction is determined from the face of a well-pleaded complaint. *Franchise Tax Bd. v. Construction Laborers Vac. Trust,* 463 U.S. 1, 8–11, 103 S.Ct. 2841, 2845–47, 77 L.Ed.2d 420 (1983). Normally, a plaintiff is "master to decide what law he will rely upon," *The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913), and " 'may avoid federal jurisdiction by exclusive reliance on state law' " even though plaintiff's claim may be viable under either state or federal law. *Sexton v. Principal Financial Group,* 920

F.Supp. 169, 173 (M.D.Ala.1996) (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Kenney v. Farmers National Bank of Opelika, Ala.,* 938 F.Supp. 789, 791 (M.D.Ala.1996)). However, there are two exceptions to this general rule. First, a plaintiff cannot avoid federal jurisdiction by casting a claim which is necessarily dependent upon federal law as a state law claim. *See Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. at 2848; *Diaz,* 85 F.3d at 1505. Second, where it is Congress' intent that federal law should provide the exclusive avenue of relief in some area of law—where it is Congress' intent to preempt an entire area of law—any claim touching on that area of law will be considered a federal claim. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987); *Kenney,* 938 F.Supp. at 791. Defendants argue that the second of these exceptions is applicable here.

ERISA is one of the few areas of law in which the Supreme Court has held that the complete preemption doctrine applies. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). ERISA broadly preempts state law claims which "relate to" an "employee benefit plan." 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Here, the parties dispute whether the disability insurance purchased by plaintiff was part of an "employee benefit plan."

29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such a plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disabili-

ty, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services.....

29 U.S.C. § 1002(1). The Eleventh Circuit has held that an "employee benefit plan" under § 1002(1) has five essential elements: (1) a plan, fund, or program; (2) established or maintained; (3) by an employer or by an employee organization, or by both; (4) for the purpose of providing medical, surgical, ..., unemployment or vacation benefits, ...,; (5) to participants or their beneficiaries. *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982).

To assist in determining whether a plan is "established or maintained" by an employer or employee organization, the Department of Labor has promulgated a "safe harbor" regulation. *See Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995) (purpose of safe harbor regulation is to describe "when (and to what extent) an employer or a trade union may be involved with an employee welfare benefit program without being deemed to have 'established or maintained' it"). This regulation provides:

> [T]he terms 'employee welfare benefit plan' and 'welfare plan' shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employee or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j) (1995). If the disability insurance purchased by plaintiff meets all four of these "safe-harbor" criteria it will not be considered part of an "employee welfare benefit plan" and, consequently, plaintiff's claim will not be preempted by ERISA. *See Hrabe v. Paul Revere Life Ins. Co.,* 951 F.Supp. 997, 1001 (M.D.Ala.1996) (listing cases).

Defendants contend that the third "safe-harbor" criteria is not met in the instant case. To meet the third "safe-harbor" criteria, an employer's activity in relation to the insurance must fall short of "endorsement." *See id.* at 1002. That is, an employer must remain neutral vis-a-vis the insurance plan's operation. *Johnson,* 63 F.3d at 1133–34. The *Johnson* Court explained the requirement of employer neutrality as follows:

> [R]emaining neutral does not require an employer to build a moat around a program or to separate itself from all aspects of program administration. Thus, as long as the employer merely advises employees of the availability of group insurance, accepts payroll deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program under section 2510.3–1(j)(3). It is only when an employer purposes [sic] to do more, and takes substantial steps in that direction that it offends the ideal of employer neutrality.

*Id.* at 1134 (citations omitted). Moreover, the *Johnson* Court held that employer endorsement vel non should be determined from the perspective of an objectively reasonable employee. *Id.* at 1135; *see also Thompson v. American Home Assurance Co.,* 95 F.3d 429, 436–37 (6th Cir.1996) (adopting the *Johnson* Court's approach to determining employer neutrality).

Resolving all issues of factual dispute in favor of the plaintiff, *see Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983), the Court finds that A.E.S. did not endorse the disability insurance purchased by plaintiff. Under the facts as set forth by the plaintiff, the disability insurance policy purchased by plaintiff: (1) was purchased in an A.E.S. office; (2) was not included in A.E.S.'s Cafeteria Plan; (3) was in addition to any insurance plaintiff purchased through the Cafeteria Plan; (4) was designed, selected and administered by Howard and Capital; (5) was paid for through a payroll deduction which may or may not have been authorized by plaintiff; and (6) required plaintiff to independently obtain a claim form from American Heritage and to independently remit the same. Under this set of facts, it is clear that A.E.S. did not endorse the disability insurance purchased by plaintiff. *See Lott v. Metropolitan Life Ins. Co.*, 849 F.Supp. 1451, 1454–55 (M.D.Ala. 1993) (finding that employer did not endorse insurance plan offered separately from employer's cafeteria plan despite the fact that employer allowed insurer to discuss life insurance plans with employees and arranged to deduct premiums from employee's paychecks).[2]

Accordingly, the Court finds that the disability insurance purchased by plaintiff was not part of an "employee benefit welfare plan." Therefore, the Court finds that plaintiff's claim for fraudulent inducement is not preempted by ERISA and that the Court lacks jurisdiction in this case pursuant to 28 U.S.C. § 1331. Consequently, the Court finds that this case is due to be remanded to the state court pursuant to 28 U.S.C. § 1447(c).

### ORDER

For the reasons set forth above, it is CONSIDERED and ORDERED that this cause be and the same is hereby REMANDED to the Circuit Court of Elmore County, Alabama, pursuant to 28 U.S.C. § 1447(c), for want of subject-matter jurisdiction.

The Clerk is DIRECTED to take all appropriate steps to effect said remand.

---

2. Defendants argue that this case is controlled by the Court's decision in *Hrabe, supra*. In *Hrabe*, the Court found that an employer had endorsed a disability insurance policy because (1) the employer selected the disability insurance policy for inclusion in its Flexible Benefits Plan; (2) no other disability insurance policy was offered through the Flexible Benefit Plan; (3) the Flexible Benefits Plan specifically provided that participation in the insurance plan would be funded with tax-free dollars; and (4) the employer administered the disability policy. *See Hrabe*, 951 F.Supp. at 1002–03. The facts of the instant case clearly differ from those in *Hrabe*. Here, A.E.S. allegedly did not select American Heritage's disability insurance for inclusion in its Cafeteria Plan, the plan was not administered by A.E.S. and it is unclear whether the insurance premiums were paid with tax-free dollars. Accordingly, the Court finds that its findings in *Hrabe* do not control the disposition of the instant case.